## Cresson *et al. versus* Ferree.

1. A testator gave equal shares of his estate to distinct trustees for the separate use of each of his daughters for life, and after the death of a daughter to go according to the intestate laws; the "trustees" to have power when they thought advisable, to sell and convey his real estate and invest the proceeds for the uses before provided; two trustees were appointed by the Orphans' Court in place of one declining; two daughters died intestate, unmarried and without issue. *Held*, that the trustees under the will and those *appointed* had power to sell the land so long as any of the trusts continued.

2. The power of the trustees to sell was not limited to the particular share of which each was trustee, but extended to the whole land devised in trust.

3. The power being beneficial was to be liberally construed.

4. The power was limited to the continuance of the trusts, although *some* of the trusts had ceased, and was therefore not obnoxious to the rule against perpetuities.

5. Act of April 22d 1846, § 1, gives the same power to trustees substituted by the Orphans' Court as the original trustees had.

January 31st 1872. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Certificate from Nisi Prius, No. 229, to January Term 1871.

This was an amicable action between John C. Cresson, Adam Everly, George M. Troutman and Albert S. Letchworth, trustees under the will of Adam Everly, deceased, plaintiffs, and James B. Ferree, defendant. A case was stated for the opinion of the court, showing the following facts:—

Adam Everly died in February 1865, owning certain real estate, described in an exhibit marked *A*, attached to the case; and having made his will and a number of codicils by which, after providing for his wife and for his son Samuel, and making other dispositions for certain of his children, he gave the residue of his estate in eighth parts, seven to distinct trustees for the separate use of each of seven daughters—Catharine and Mary being two; the remaining eighth part he gave to his son William A. Everly absolutely.

The bequests to the daughters were similar; Catharine's is as follows:—

" One other full equal eighth part or share thereof I give, &c., unto the said John C. Cresson, his heirs, &c., to hold the same and every part and parcel thereof, with the appurtenances, unto the said John C. Cresson, his heirs, &c., in trust, * * * to let, lease and demise the real estate, and put and keep out at interest on some good and safe investment the personal estate forming such part or share, and collect in and receive the rents, interest

and income thereof, &c., * * * and to pay the same over from time to time, when and as the same shall be got in and received, unto my daughter Catharine Everly, for her sole and separate use for and during all the term of her natural life, yet so that the said rents, &c., * * shall not be under the control of any husband whom she may hereafter have or take, or in anywise subject to or liable for any of his contracts, debts or engagements; and from and immediately after the death of her, my said daughter Catharine, then in trust, &c., * * to and for the only proper use and behoof of all and every the child or children which she, my said daughter Catharine, may have or leave, and the lawful issue of any of them who may then be deceased, having left such issue, their several and respective heirs, executors, administrators and assigns for ever, such issue of any deceased child or children of her, my said daughter Catharine, taking, however, and only receiving such part or share thereof as his, her or their deceased parent or parents would have had and taken had he, she or they been then living. And in the event of the death of her, my said daughter Catharine, without leaving any child or children or lawful issue, and without leaving any lawful issue of any deceased child or children, then in trust as regards the whole of the said share of my residuary estate, to and for the only proper use and behoof of the right heir or heirs of her, the said Catharine, according to the then existing laws of the Commonwealth of Pennsylvania, their several and respective heirs, executors, administrators and assigns for ever." * * *

He further provided: "I do hereby authorize and empower the above-named trustees or their heirs and assigns, in case they shall deem it advisable and conceive it to be for the benefit of my estate to do so, to sell or dispose of all or any part of my said residuary estate (excepting always the premises in West Philadelphia called 'Emlenton,' hereinafter mentioned), and by the proper deed or deeds, conveyances or other assurances in the law, to grant and convey the same to the purchaser or purchasers thereof in fee, and the moneys arising from such sale or sales again to invest in their discretion, in trust for the several uses hereinabove set forth and declared of and concerning my said residuary estate.

"I do hereby expressly order and direct that no sale, partition or alienation whatever shall be made of my said estate in West Philadelphia called 'Emlenton,' or of any part thereof, for at least a period of ten or fifteen years after the decease of my wife."

Morris Patterson, a trustee named in the will for two of the daughters, having declined to accept the trust, the Orphans' Court appointed George M. Troutman for one, and Albert S. Letchworth for the other.

Catharine died in the life of the testator, unmarried and without issue; Mary died since his death, intestate, unmarried and

without issue; Samuel died after Mary, leaving a widow and several children, and having made a will, by which he disposed of his interest in Catharine's share; but made no disposition of his interest in Mary's share.

The trustees, acting under the power in the will, on the 5th of October 1869, sold the land described in exhibit A at public auction to the defendant for $15,700. He declined to pay the purchase-money and take a deed, on the ground that the plaintiffs could not by their own deed as such trustees convey to him a good and sufficient title thereto in fee simple, discharged of all trusts and limitations created by the will of said testator.

By the case the parties "submit to the court the question whether the plaintiffs under the provisions and powers contained in said will, and by virtue thereof and the substitutions so made as aforesaid, have power and can convey a good and sufficient title in fee simple to the said defendant to the aforesaid lot of ground freed from any trusts or limitations contained in said will, in respect to the testator's residuary estate, and if the court shall be of opinion that they can so convey the same, then judgment to be entered in favor of the plaintiffs for $15,700 with interest from the date hereof, recoverable on the execution and delivery or filing in court of a deed of conveyance to be approved by the court, and if the court shall be of opinion that the plaintiffs cannot by their own deed convey such title as aforesaid, then the judgment to be entered for the defendant, and the costs to follow the judgment."

The court at Nisi Prius entered judgment for the defendant. The plaintiff had the record certified to the court in banc, and assigned the entering of judgment in favor of the defendant for error.

*J. B. Townsend* and *W. M. Tilghman*, for plaintiffs in error, as to the power of the trustees to sell, referred to Sugden on Powers 43. They should be favored: Boyce *v.* Hanning, 2 Crompton & Jervis 334; Coates *v.* Hughes, 3 Binney 498; Edwards's Appeal, 11 Wright 144; McKnight *v.* Read, 1 Wharton 213; Walker *v.* Hall, 10 Casey 483; Young's Appeal, 3 Wright 118. The substituted trustees have the same powers as the original trustees: Acts of March 17th 1838, sect. 2, Pamph. L. 81; April 10th 1849, sect. 2, Pamph. L. 597; April 13th 1859, sect. 1, Pamph. L. 611, 2 Bright. Purd. 1422, 1423, pl. 52, 56, 55. After the death of one of the cestuis que trust, the power still remains in the trustee: Tower *v.* Knightley, Maddock 91; 2 Sugden on Powers 509.

*H. Wharton,* for defendant in error.

The opinion of the court was delivered, February 5th 1872, by

[Cresson v. Ferree.]

SHARSWOOD, J.—That the testator Adam Everly intended to invest the trustees named in his will with a general power of sale over his residuary estate, is altogether incontrovertible. This appears not only by his express language, but by the exception of that part called Emlenton, for at least a period of ten or fifteen years after the decease of his wife. It was evidently not merely a power in the trustees over their respective estates, in the land, but a collateral naked power over the whole land itself. The object of the power was manifest—that the land otherwise unproductive might, whenever suitable, be brought into the market, and made available for the purposes of the will. It was beneficial, and therefore to be liberally construed, because while testators are thereby enabled to subserve the true interests of their children by limiting to them only life estates, the growth and improvement of the city are not obstructed.

Was this a valid power of sale originally, or has anything occurred since which renders its present exercise invalid? The donees of the power are perfectly certain—and the subject-matter over which it is to be exercised. So is the time within which it is limited. We may concede that a general power over an estate without limitation of time—unless after an estate tail—would violate the rule against the creation of perpetuities. In this case, however, the power of sale is clearly limited to the period during which the trusts created by the will subsist, or some of them; and that cannot exceed a life or lives in being at the death of the testator. Upon the death of the daughters the trusts respectively cease, and the shares discharged of the trusts become executed in their children, who will thereupon be entitled to a conveyance from the trustees. This very point was considered and decided by the Master of the Rolls, Sir John Romilly, in Tait v. Swinstead, 26 Beav. 525, where an estate was devised to trustees for different persons in fifth shares, some of which shares were given to living persons absolutely, and the others to living persons for life with remainder to their children in fee, and an unlimited power of sale over the whole estate was given to the trustees: it was held that this power of sale was valid, and could be exercised over the whole estate, so long as any of the trusts of any of the shares remained to be performed.

Nor has anything since occurred to render the exercise of the power invalid. The trustees appointed by the Orphans' Court in the place of Morris Patterson, who declined to accept the office, are clearly invested with all this power. "In all cases where any trustee or trustees created or vested with authority by the last will and testament of any deceased person, or any writing testamentary in the nature of a will, shall die, resign or be otherwise removed from the trust, the Orphans' Court of the proper county shall have power and authority to appoint another trustee or

20 P. F. SMITH—29

[Cresson *v.* Ferree.]

trustees, to supply the vacancy occasioned by such death, resignation or removal:" Act of April 22d 1846, § 1, Pamph. L. 483. What has already been observed evinces that the power is not affected by the fact that some of the trusts have ceased, because it is entirely collateral to the respective estates of the trustees.

> Judgment reversed, and now judgment for the plaintiffs for the sum of $15,700, with interest from December 16th 1870, recoverable on the execution and delivery or filing in court of a deed of conveyance of the property described in exhibit A annexed to the case stated.