# Hart's Estate (No. 1).

*Trusts and trustee—Improper investment—Surcharge.*

Where a testator leaves his estate to his son in trust to pay portions of the income to testator's wife and daughters during the life of the wife, and to distribute the principal after the death of the wife to his son and daughter, and authorizes his trustee to sell any part of his estate and to invest the proceeds in such other securities as may in his judgment seem best, the trustee is not authorized to invest $10,000, of the estate in an issue of bonds amounting to $350,000, secured by a mortgage on a manufacturing plant in another state, where it appears that the trustee knew nothing of the value of the plant, whether estimated by what it would bring at a sale in the market, or by its income from operation, and where it appears that he consulted no one before purchasing, except his brokers, and a person who had guided his father in investments, and it also appears that the company defaulted on the mortgage interest within less than two years after the purchase. If the trustee makes such an investment, and a loss results from it, he will be surcharged.

Where a trustee neither exercises common skill, common prudence, nor common caution, and is either guilty of supine negligence in being ignorant of facts which ordinary intelligence would have disclosed to him, or if known, in not exercising his best judgment upon them, and a loss results, he will be surcharged.

Argued March 26, 1902. Appeal, No. 387, Jan. T., 1901, by Charles Henry Hart, executor and trustee under the will of Samuel Hart, deceased, from decree of O. C. Phila. Co., Oct. T., 1898, No. 552, dismissing exceptions to adjudication in estate of Samuel Hart, deceased. Before McCollum, C. J., Dean, Fell, Brown and Mestrezat, JJ. Affirmed.

Exceptions to adjudication.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in sucharging the trustee with the principal, namely, $10,000, of the Ætna Iron Company mortgage bonds, with the assessments thereon amounting to $1,200 and with interest amounting to $9,603.33.

*Frank P. Prichard* and *John G. Johnson*, for appellant.—The trustee was improperly surcharged with $10,000, loss on Ætna Iron Company mortgage bonds, $1,200 assessments paid and $9,603.93 interest: Bartol's Estate, 182 Pa. 407

*James Aylward Develin* and *Alexander Simpson, Jr.*, for appellee.—The whole trend of decisions in this state has been that a trustee can only protect himself from risk by investing under authority of the court, and, since the acts of assembly referred to have been passed, in such securities as are therein provided. Any authority in the instrument creating the trust must be strictly construed in the light of such decisions. The rule contended for is established for the protection of the trust estates and is founded upon the highest considerations of public policy: Perry on Trusts, secs. 452, 460; Mant v. Leith, 15 Beav. 524; Worrell's App., 9 Pa. 508; Ihmsen's App., 43 Pa. 431; Hemphill's App., 18 Pa. 303; Worrell's App., 23 Pa. 44.

OPINION BY MR. JUSTICE DEAN, October 13, 1902:

Samuel Hart, the testator, died June 2, 1885, leaving an estate, approximately, of the value of $170,000, consisting of land in Philadelphia and Montgomery counties, also a large amount of personal property made up of stocks and bonds in many corporations. Julia Hart, his wife, and Charles Henry Hart, his son, the latter this appellant, were appointed executors and trustees under the will. In May, 1886, less than a year after the death of testator, his widow, Julia Hart, died and thereupon, all the duties of executor and trustee devolved upon the survivor, this appellant. No inventory of the personal property had been filed by the executors, and none had been demanded by the beneficiaries. Fifteen years thereafter, when directed to do so by the orphans' court, the surviving executor filed an account both as executor and trustee. The auditing judge, after testimony taken, directed a restatement of an account, and on the restated account distributed the balance. Exceptions to his adjudication were filed, and after hearing, several were sustained, but the conclusions of the auditing judge were in the main not disturbed. This appeal is from the final decree of the court below. Appellant's first assignment of error alleges that the court erred in surcharging the executor with the principal of an investment of $10,000, Ætna Iron Company bonds, with assessments thereon of $1,200, and interest amounting to $9,603.33.

The duties imposed upon the executors and trustees are

either expressed by, or are plainly to be inferred from the testator's directions. By the terms of his will he gave all his residuary estate, real and personal, to his executors in trust, to pay his sister $600 for life, to pay his wife $15,000 annually during her life, and to pay the excess of the income of his estate, during the life of his wife, after the payment of these annuities, one third to his son, Charles Henry Hart, and the remaining two thirds to his three daughters, Clarissa S. Chase, Sara J. Hart and Rebecca C. Hart. He directed, that upon the death of his wife, his estate should be divided into eight equal parts. One of these parts he gave to his son, Charles Henry Hart, absolutely and in fee simple ; another of these parts he gave to his son, Charles Henry Hart, in trust for his daughter, Clarissa S. Chase for life, with remainder over ; and the remaining six of the eight parts he gave to his son, Charles Henry Hart, in trust, for his unmarried daughters, Sara and Rebecca, while they remained unmarried, with a provision that if either married, the other should receive the income of four parts and the one marrying should receive the income of only two parts and with certain remainders over after the death of both.

As already noticed, the widow died in May, 1886. On January 3, 1887, appellant purchased as an investment for the estate, $10,000 six per cent mortgage bonds of the Ætna Iron Company at par. Four semiannual payments of interest were made ; afterwards assessments were made upon them which appellant paid out of other money of the estate ; then the mortgage was foreclosed and a reorganization had ; under the reorganization plan, appellant accepted for the original investment, $10,000 Ironton Coal Company stock and $1,200, Ironton Coal and Iron Company bonds. The property of the company, on which the original mortgage was given to secure the bonds, was at Ironton in the state of Ohio ; it consisted of land and furnaces for the manufacture of iron ; the character and value of the property are not otherwise stated; the whole issue of bonds secured originally by the mortgage was $350,000 ; appellant purchased the $10,000 from brokers in Philadelphia ; so far as appears, he never saw the mortgaged property ; he did not know the capitalization of the company, whether it was paid, nor its earnings ; he says he did know the earnings were not satisfactory. The purchase was made under the advice of a person who had guided

appellant's father in some investments. It did not clearly appear, just what was the value of the investment when the account was filed, thirteen years after, but it is highly probable, that the stock and bonds representing it, in the hands of accountant are worth very little.

The express authority given the executors and trustees by the will is found in the twelfth clause, as follows:

" I make, constitute and appoint my dear wife Julia Hart and my son Charles Henry Hart executors and trustees of this my last will and I give to them, and to the survivor of them, full power to sell or exchange any real estate, either for cash or on mortgage or upon ground rent, without liability on the part of any purchaser to see to the application of the purchase money, of which I may die seized and I appoint them guardians of the estates of any minor children entitled to any part of my estate, and I also authorize my said executors and trustees to continue to hold as part of my said estate herein created any stocks or bonds forming part of my estate at the time of my death, and to sell any part thereof and to invest the proceeds in such other securities as may in their judgment be best."

The last words of the clause, " To sell any part thereof and to invest the proceeds in such other securities as may in their judgment be best," are relied on as authority for this investment. Taking these words by themselves, they would seem, as argued by appellant's counsel, to give authority almost unlimited; in any review of an act of investment, the trustees might simply answer, " the investment was according to my best judgment; " and that would be the end of the matter in the absence of fraud. But appellant's duty as trustee is not to be interpreted solely by this clause, but by the intention of the testator as manifested in the whole will. Except as to comparatively small bequests and the share of his son, Charles Henry Hart, the income, alone, during a life or lives, is to be paid out and then as contingencies happened the principal was to be distributed. The duty of preserving the principal for the remoter beneficiaries was just as clearly imposed, as that of paying to the immediate ones the income. Except as to testator's sister, Bluma Hart, who was to be paid an annuity of $600, and as to his wife annually $15,000 for the support

of herself and two unmarried daughters, there were no fixed annual payments ; this last payment ceased with the death of his wife about a year after his own. The larger part of the estate was then held by appellant in trust to pay out to the legatees the income thereof as provided by the will; there was no imperative duty on the trustee to make a large income to meet fixed charges or annuities. His obvious duty was to preserve the principal by reasonably safe investments and to pay such income as was earned from such investments to those entitled thereto. He was not to increase the income by any sort of supposed largely remunerative investments which might endanger the principal. This intention is so obvious throughout the whole will, that while the twelfth clause, as quoted, may seem to give almost unlimited authority to invest, this authority must. be restricted, so as to accord with the main intention to preserve the principal. It was not an unlimited authority to invest the money as an ordinarily prudent man would invest his own. The testator had rightfully exercised that kind of prudence in accumulating the fortune, and he intended that his death should end the risks of accumulation and the money should go to those for whom he had made it, on the happening of the contingencies specified ; he took risks in making it which an ordinarily prudent man would take, but the same risks taken by his trustee in view of his special duty might be highly imprudent. He must take such risks only, as an ordinarily prudent man would take who is trustee of the money of others. The object of the one was to make money, the duty of the other was to take care of it, a very different responsibility from that of him who made it. And while we do not think a fair interpretation of the will restricts him exactly to that class of securities specified in the constitution and the statutes, nor enjoins upon him, if he desired to avoid personal answerability, an application to the court for a cautionary order, such interpretation does subject his alleged " best judgment " to review by the court.

Here, it is proper we should discard an idea, which is suggested by a looseness of statement in some of the authorities. For example, in Cridland's Estate, 132 Pa. 479, occurs this language :" A trustee is not required to be infallible in his judgment nor to possess the power of anticipating events not generally looked

for.  Common skill and common prudence are all that is de-
manded and if these are exercised, a loss arising must be borne
by the estate, which the testator who is supposed to have contem-
plated such risks has thought proper to confide to his care."
A distinction which is palpable in the Cridland case and all the
other cases where similar language is used, is lost sight of be-
cause not expressed.   In the case cited a small amount of
money where a large sum was invested in United States 5–20's
was lost because the government exercised its option to redeem
the bonds at par long before the expiration of the twenty years,
while the trustee had paid a premium on the investment, hence
the loss.   The investment was the very one authorized by the
constitution and statute ; at the time it was made, the principal
in all human probability could not be and was not lost; it was
the opinion of all astute financiers, that the government would
not exercise its option, because for lack of funds during the
years it ran it could not; but wholly against all expectation, it
was able to borrow at four per cent, and therefore promptly
called in its six per cents.   The language of the court very
pointedly fitted the facts of that case, and will fit the facts of
every case where a prudent man makes an investment with the
object only of securing the principal and realizing a reasonable
income.   Nor does the law demand any more care or foresight
by a trustee in case of such investment.   But a prudent man
with his own estate, with the object of making money, expecting
his investment to largely enhance in value, may take greater
risks ; it is nobody's business but his own ; he calculates proba-
bilities of success or failure and takes the chances ; if successful,
foresight and business shrewdness are attributed to him; if
failure happens, then speculation or something worse ; but he
is no more imprudent in the one case than in the other ; future
events are from their very nature not definitely forseeable, and
a prudent man has a perfect right to venture his own money on
a calculation of business chances ; all fortunes are accumulated
by the exercise of just that sort of very common prudence.
But with a trustee the case is different ; he has all the knowl-
edge, foresight and judgment of the business man ; but the
money to invest is not his own but belongs to others ; it is his
plain duty, if he would safely keep it, to minimize risks.   He
is not bound to have more prudence than the other, but he must

utilize his, in avoiding risks which the one who owes no duty to others is free to take. In the one case, in view of probable favorable results, prudence says, "Take the risk;" in the other, in view of very possible disaster, prudence says, "Take not the risk." Common skill and common prudence, as is said in the many cases cited, are all that the law demands of a trustee; that is, the common skill and prudence of an investor of money to be safely kept with such reasonable income as is commensurate with safety of the principal.

A careful scrutiny of accountant's own testimony throughout fails to show in view of his duty to others, the exercise of judgment or prudence as to this investment. The mortgage was on a manufacturing plant in another state; he did not know its value, whether estimated by what it would bring at a sale in the market, or by its income from operation; estimating it at the amount of the mortgage he invested in, a one thirty-fifth interest at par, it was such a small fraction as gave him practically no influence in the control of the property, and but little as a purchaser or as party to the reorganization. The very fact that within less than two years the company defaulted on the mortgage interest, while far from conclusive, is some indication that it was an imprudent investment by a trustee of the money of others. His testimony shows he did not know, approximately, the value of the property then and does not know now. He consulted, before purchasing, one who had "guided" his father in investments, and presumably the brokers whose interest it was to sell the bonds; he does not state what opinion either gave to him, nor what statement he made to them. If he had said to them, the $10,000 was the money of his sisters and their children, given him as trustee to be safely invested, their opinion, if they were men of probity, might have been very different from that they would have given him if they believed he was investing his own money. But however this may be, whatever they may have said, he was not relieved from the duty of exercising his own "best judgment." When his conduct was questioned, the burden was on him to show that under the circumstances it was dictated by, at that time, a reasonably sound judgment, even though it had turned out an unfortunate one. He wholly fails to do so. At best, admitting that the twelfth clause of the will takes him out of the operation of the

constitution and legislation since 1874, he is in no better situation than a trustee before that year. In Pray's Appeal, 34 Pa. 100, the appellant was a son of testator and both executor and trustee under his father's will for his mother and sisters; he was directed to pay to them a certain income and to keep invested the principal. He invested several thousand dollars in the stock at par of the Pennsylvania Oil Company, a manufacturing corporation; the money was lost; on adjudicating his account the cestuis que trust claimed that he should be surcharged with the loss; the accountant alleged that at the time he made it the investment was a good one and that it was expressly or tacitly assented to by his mother and sisters. In addition, he proved that about the time he purchased the stock a number of intelligent, prudent men of business bought it at par, one even paying a premium for it; that two of the beneficiaries before the investment had called at the office of the company and inquired as to its financial condition and prospects and were satisfied. The orphans' court surcharged him with the stock. On appeal the decree was affirmed, this court saying: " If such investments are to be countenanced by courts of justice, then the money of infants, married women, deaf and dumb people, idiots and lunatics, will be placed at the mercy of speculative or dishonest trustees, instead of their discretionary action being regulated by sound and well-settled principles of jurisprudence." Then again, the court noticing the case of Kimball v. Reding, 31 N. H. 325, says: "It is time that this mode of wasting the property of infants and married women should be put an end to. It will save both trustees and cestuis que trust hereafter, by declaring that no such investment can be sanctioned or sustained by this court."

The extent of the power in the Pray will was even less restricted than the one before us, for the testator says: "It being my will and intention to vest in my said executor all the power and authority necessary for the management and settlement of my estate in such manner as he in his discretion shall find requisite and see fit to exercise as fully and effectually as I myself could lawfully have and exercise if living." We do not say, that a trustee under a power given in such a will as the one before us, cannot lawfully invest trust funds in the mortgage bonds of a manufacturing company except at the risk

of being surcharged if the investment turns out a losing one; what we do say is, that if it do so turn out, he must be prepared to show that when it was made, he knew at least the essential facts on which to base a judgment, and that he then exercised his best judgment. It is not necessary to so surcharge him, that we should find he is a grossly negligent business man; we do find that as a trustee he was recklessly ignorant of the character of this disastrous investment and that common prudence dictated it ought not to have been made. Of the many cases cited by the learned counsel for appellant not one on its facts rules the case before us. The substance of them is summed up in Chambersburg Saving Fund Assn.'s Appeal, 76 Pa. 203, " It is well settled that a trustee shall not be surcharged for a loss which has occurred in case he has exercised common skill, common prudence and common caution; but for supine negligence or wilful default he shall be held responsible." This trustee neither exercised common skill, common prudence nor common caution; he was either guilty of supine negligence in being ignorant of facts which ordinary intelligence would have disclosed to him, or if known, in not exercising his best judgment upon them. He ought, therefore, as the court below decided, to be surcharged with these bonds, their interest and assessments. The decree is affirmed and the appeal is dismissed.