## Hammett's Estate

354

[redacted]

Before Lamorelle, P. J., and Van Dusen, Stearne, Sinkler, and Klein, JJ., and Marx, P. J., twenty-third judicial district.

*Robert W. Skinner, Jr.*, and *Boyd Lee Spahr*, for exceptants.

*Leonard J. Schwartz*, contra.

VAN DUSEN, J., May 17, 1935.—The trustees of this estate were a trust company, the testator's widow and the testator's brother. The latter was vice-president of Huber and Company, a corporation engaged in business as dealer in securities. There was no evidence that he was a stockholder in the corporation, or even that he got a salary. A number of securities were sold to the trustees by the dealer corporation which received a commission thereon. These

were all new securities put on the market in the usual way through dealers, and this dealer had a quota to dispose of. The relations of Huber and Company to this trustee are urged as a ground for surcharging the trustees with all these investments.

If a trustee sells to the trust securities in which he has a personal pecuniary interest, the beneficiary has the option to reject the investment. The application of the rule does not depend on actual gain or loss. It is intended to remove temptation from the trustee. In the present case it did not appear that the trustee was a stockholder in the dealer corporation, or got any personal commission, or that the transaction directly put a dollar in his pocket. If there was an advantage to this trustee in this transaction, it was only the indirect advantage which might accrue to him in improving his position with his house by producing a customer. Such an advantage is too indefinite and intangible to be recognizable by the law.

The standard of conduct for trustees who are making investments was long ago stated to be "common skill, common prudence, and common caution": Calhoun's Estate, 6 Watts 185; and this has been repeated so often as to have become a fundamental maxim. The suggestion made on behalf of the exceptants that " 'a stricter rule of responsibility should be exacted from trust companies as fiduciaries' than from the ordinary individual trustee" would be an "advance in the law": Linnard's Estate, 299 Pa. 32; which we are not prepared to make. In Detre's Estate, 273 Pa. 341, it was said:

"All that a court of equity requires from a trustee is common skill, common prudence and common caution, and he is not liable when he acts in good faith as others do with their own property: Semples' Est., 189 Pa. 385; Wood's Est., supra; Neff's App., 57 Pa. 96. Furthermore, a trustee will not be held personally liable for an honest exercise of a discretionary power, in the absence of supine negligence or wilful default (Bartol's Est., 182

Pa. 407; Chambersburg Saving Fund Association's App., 76 Pa. 203, 227)".

This case points out that Hart's Estate (No. 1), 203 Pa. 480 (which is frequently cited in support of surcharges), is based upon the supine negligence of the trustee in failing to get proper information, rather than upon bad judgment in acting on information. In Taylor's Estate, 277 Pa. 518, 528, in dealing with the retention by a trustee of investments made by the testator which were not authorized by the law, it was said that the trustee must show:

"that his retention of the securities in question represents, not a mere lack of attention, but the honest exercise of judgment based on actual consideration of existing conditions; in other words, he is expected to be ordinarily watchful and to exercise normally good judgment."

In Brown's Estate, 287 Pa. 499 (also a case of retention), it was said:

"The judgment of a fiduciary acting in good faith on considered circumstances, should have controlling effect as to the time of sale of the particular investment. The matter is very well covered in these lines of the Chief Justice's opinion quoted above, 'that the retention of the securities represent, not mere lack of attention, but the honest exercise of judgment based on actual consideration of existing conditions.' The rule is, What would a prudent man ordinarily do if a similar situation confronted the disposition of his personal affairs?"

The standard of conduct in making investments is the same as in watching them.

The will of this testator provides: "I direct my Executors and Trustees in their discretion to retain any of the investments I may have at the time of my decease in the same securities and further in making investments of Trust Funds I direct that they be not confined to what are termed legal investments and I do relieve them from

any loss my estate may sustain by reason of the exercise of the discretion herein given them."

It is argued that the last clause relaxes the standard of conduct required of the trustees, and that they are liable only for fraud or wilful default. But they are relieved from liability only if they exercise discretion, and it is not discretion to act without investigation or reason. Provisions of a will supposed to relieve trustees from their ordinary duties should be strictly construed, and there is nothing in this will to show that the discretion which the trustees are to exercise is any less than the discretion of the common man, which is the standard for all trustees. If the meaning now sought to be ascribed to this language had been written out and presented to the testator, it is not likely that he would have put it in his will, viz., "My trustees shall not be liable for any loss, even though they buy securities without inquiry and in the face of patent warnings." In Detre's Estate, 273 Pa. 341, 344, the will authorized the trustee to invest "in such securities as to him may seem best without responsibility as to the exercise of his discretion in so doing". Although the trustee was not held responsible in that case, there is no suggestion in the opinion of the court that the standard applicable to him was other than the ordinary standard.

Once the investment is made the trustee must watch it. As said in Taylor's Estate, 277 Pa. 518, 528, the trustee must show an "honest exercise of judgment based on actual consideration of existing conditions." This court has had occasion to apply this rule in Edwards' Estate, 6 D. & C. 121, Dickinson's Estate, 21 D. & C. 247, 250, and Mitchell's Estate, 21 D. & C. 225, in which it appeared that the trustee had given the subject of retention of securities intelligent attention, and he was not surcharged. Also in Kelch's Estate, 21 D. & C. 204, in which the trustee was surcharged because it had given the subject no attention at all, that is to say, it had been guilty of supine negligence. In Dickinson's Estate, supra, Judge

Gest said that a trustee charged with negligence in retaining investments "will be liable to a surcharge only for a failure to study carefully the circumstances and conditions that controlled the value of the investments, or, if he has made such a careful study, for failure to act intelligently with respect thereto."

We are fully aware that while the standard of conduct is the same in watching investments as in making them, the nature of the problem is different because the factors are different. The trustee at times finds himself in a difficult position in determining whether or not to retain an investment. As pointed out in Edwards' Estate, supra, and repeated in Dickinson's Estate, supra, ordinarily the information which he may get of decreased earnings, bad prospects of the business and the like, is known to the public generally, and depreciates the price of the security. The trustee has not the same freedom of choice which he has in deciding whether or not to make an investment initially. The decision which he is called upon to make is whether he will sell at the depreciated price, or will wait in the hope of getting a better price, that is to say, he is called upon to judge, not of the present but of the future. He should make some attempt at a proper forecast, but if he does so, he is not to be condemned on the basis of after events. He is not called upon to guess right, but only to give himself an opportunity to guess right. That the price has gone down is not a compelling reason for selling. If he sells he may find himself in the predicament of the trustee in Stewart's Appeal, 110 Pa. 410. In that case the trustee sold at the low price. The security recovered, and the beneficiaries sought to surcharge him for not holding on.

Among the matters which a trustee may take into consideration in making an investment is the advice of experts, who are not infallible but who know more in some lines than the ordinary man. Especially is this so in dealing with items like coal bonds. The considerations

which should control are not within the knowledge of the common man. Indeed it would seem that the trustee is acting with common prudence when he consults someone with more skill than himself. If he has such advice, then although there may be before him other considerations which would say no, or the contrary advice of experts, still he is called upon to make his choice. If the ground of his choice is reasonably adequate and there are no danger signals which should be apparent to the ordinary man, he has used discretion and is not liable for the result.

We will now examine each of the items complained of separately:

### Illinois Coal Company Bonds

The auditing judge surcharged the cost of these bonds because they were bought from Huber and Company, a reason which we think insufficient. He also found that the investment was negligently made.

These bonds were rated "Baa" in Moody's Manual, which was consulted by the trustees before making the investment. This rating is thus described in the manual: "Bonds carrying a Baa rating are also on the constructive plane so far as the tests of asset value, earning power and stability are concerned. No bond is given a Baa rating by our experts or rating council unless it meets the uniform tests determined upon for all such issues. Non-statistical factors may keep it out of this group, but if not, it is classified as a strongly protected issue of probable growing value. Baa bonds of many classes can generally be strongly recommended to all investors who do not exclusively seek the very highest grade groups and who generally want a larger income return than can be obtained among the Aaa, Aa and A classes. More frequently than any of the other groups, Baa bonds in time reach a higher investment plane."

This is a standard manual consulted by investors and giving expert advice. We are not prepared to say that

trustees who have a discretion are bound to invest only in "very highest grade groups". They are entitled to rely on expert advice. They should heed patent warnings, however, in spite of expert advice. It appears that the earnings of this company had fallen off for 3 years. But the earnings were still nearly twice the bond interest after depletion, but before taxes and depreciation. No information is given as to what the depletion allowance was, or what might be a proper estimate of taxes and depreciation. It is uncertain whether depletion included depreciation. Still the burden is on the objectors to show that there was danger in the earnings statement, and that does not affirmatively appear. The coal industry had been through difficulties; some thought the future was good and others thought it was bad. Trustees are not to be condemned because the prophets of evil turn out to be right. On the whole we conclude that there was no negligence in making this investment.

The auditing judge also thought that there had been negligence in watching the investment, and in failing to sell a year or two after the investment was made, but he did not surcharge on that ground because he had no evidence of the price at that time. This investment soon turned out to be bad, and there was doubt whether to sell or not. The trustees gave it thought and inquiry. They learned that Moody's Manual no longer gave the bonds a rating, because of lack of sufficient data, and that earnings were falling off. They also learned that responsible financial institutions had put $1,500,000 behind these bonds. They considered the problem on fairly reasonable information, and are not to be held responsible for deciding wrong. The accountants' ninth exception is sustained.

### Old Ben Coal Company Bonds

These bonds were bought from Huber and Company, and we have concluded that that is not a sufficient ground

for surcharge. The auditing judge found negligence in making the investment. The trustees consulted Moody and found that these bonds were rated "Baa". It is argued that that was a warning, which should have deterred the trustees in the uncertain future of the coal industry; but, the same reasons apply here as in the case of the Illinois Coal bonds. There is no showing that current earnings were falling off. We conclude that the finding of negligence of making the investment was not justified.

The auditing judge also found (alternatively) that the trustees were negligent in not selling these bonds in 1926 when they could have obtained 88 for them. Earnings after depreciation and depletion have varied. Sometimes interest was earned, and sometimes it was not; but the company has always paid interest (having a surplus) and is still doing so. The bonds have been rated by Moody at least "Ba" down to 1929, and the price touched 90 in each year to 1928. It appears that the trustees gave thought to the question of selling or retaining these bonds, and had reasonable information before them on the subject, and we conclude that they were not negligent in this respect. The accountants' 12th and 13th exceptions are sustained.

### Richland Coal Company Bonds

The auditing judge found no negligence in making this investment, and that charge is not pressed. He found negligence in failing to sell in 1925, because no earnings or ratings were available after their purchase in 1924 and the bonds were admittedly then "slipping". However, as no prices were shown, no surcharge was made on this ground. It would be very dangerous if trustees were bound to sell as soon as an investment began to slip, taking the depreciated price which that slipping necessarily produced. A surcharge of this item was made solely on the ground that the investment was bought

from Huber and Company. The accountants' 14th exception is sustained.

## Penn Athletic Club Bonds

No negligence is charged in purchasing these bonds, but it was alleged that they were improperly retained after 1929. It is true that the earnings after depreciation by 1930 were not sufficient to pay interest. But that does not mean that the trustees could not exercise their judgment about holding on once they were committed to the investment. The auditing judge said that he was not convinced that the trustees erred in not selling these bonds, and he therefore refused to surcharge. We agree with his conclusion, but think that his reason is not correctly stated. The question is not whether the trustees made a mistake in judgment, but whether they made an attempt to exercise judgment on reasonable grounds. As there is no evidence that they were inattentive, and as the burden is on the objector to show their negligence, a surcharge was correctly refused. This item was bought from Huber and Company, but no surcharge was made on that ground, apparently because the auditing judge thought this ground of objection was not pressed. It is now pressed, but as we have not sustained it, we must and do dismiss the second exception of Martha R. Hammett.

## Pine Manor Bonds

These bonds were bought from an individual, and the trust company which was one of the trustees, acted as agent for the seller in the transaction, but without compensation. If there was any advantage to the trust company in this transaction, it was even more indirect and intangible than in the case of Huber and Company. So far as the surcharge of this item is based on the dual relation of the trust company, we do not think it is justified.

The auditing judge also found that there was negligence

in making the investment. These bonds were part of an issue of $160,000 secured upon an apartment house, and guaranteed by the Philadelphia Company for Guaranteeing Mortgages. The investment was made in December 1930. So far as appeared the investment was passed upon by the trust company only, acting by its investment committee. The secretary of that committee stated that the committee in approving the investment had before it an appraisement of the property and the guarantee. But no contemporary appraisement was produced. It was testified that a year later the premises were appraised at $250,000. It did not appear who the appraiser was, or what were his qualifications. As trustees are to invest in mortgage bonds and not in guarantees, it affirmatively appeared that these trustees, when they made the investment, did not have before them information from which an ordinary man could properly pass on the wisdom of the investment, and they were, therefore, negligent.

As to danger signals:—At the time the investment was made, taxes for 1930 (the current year) had not been paid. We would not say that this fact, if known, was of itself a warning which should have prevented the investment. Further, there was no inquiry as to current earnings of the apartment house. Whether a trustee in buying a bond secured on a business enterprise, which is by no means as readily salable as a dwelling or other common property, must make inquiry not only as to capital value, but as to current earnings, we leave to be decided when it is necessary to do so.

The accountants' twentieth exception is dismissed.

### Seaboard All Florida Railway Bonds

The objectors did not charge negligence in purchasing these bonds. The auditing judge found that there was no negligence in retaining them. There was no evidence of lack of attention. These bonds defaulted in 1929 and the auditing judge declined to surcharge for any error in

judgment in selling or not selling after that critical year, a conclusion in which we thoroughly concur. It has been more difficult to decide since that year whether or not to sell securities, because price fluctuations have been greater. But the problem is no different in character at any time. These bonds were bought from Huber and Company, but this fact is not referred to by the auditing judge, no doubt because he thought that that point was not pressed. It is now pressed, but for the reasons already given, it cannot be sustained. The first exception of Martha R. Hammett is dismissed.

The third and fourth exceptions of Martha R. Hammett relate to interest on the Illinois and Richland bonds, and as the surcharges with respect to them are not sustained, these exceptions are also dismissed.

The other exceptions of the accountants are sustained so far as they are in accord with this opinion, and otherwise are dismissed.

MARX, P. J., dissenting.—I dissent from the action of the court in sustaining the accountants' ninth and twelfth exceptions. In all other respects, I concur.

Judge Lamorelle joins in this dissent.