## Brown's Estate

*John F. Sullivan* and *J. Austin Sullivan,* for exceptants.

*Richard H. Gilbert,* contra.

PATTERSON, P. J., December 31, 1935.—In his report filed on May 7, 1934, the auditor appointed to pass upon exceptions to the fourth and partial account in the estate of A. M. Brown, deceased, found that the accountant had purchased bonds of the Masonic Hall in Tyrone in the sum of $5000 and that, while the bonds were real estate security and legal within the provisions of the Fiduciaries Act of June 7, 1917, P. L. 447, as amended by the Act of April 26, 1929, P. L. 817, the said investment had been made by the trustee without the exercise of "common skill, common caution and common prudence . . . and without due regard for the safety of the trust funds he invested," and surcharged the accountant in the amount of the investment with interest at six percent from January 1, 1932. The accountant filed four exceptions to the auditor's report, all of them charging the auditor with error in making the surcharge and in refusing to dismiss all of the exceptions to the said account.

The only question for consideration at this time is: Did the trustee act in good faith and with common skill, prudence, and caution in making said investment? The evidence supports the conclusion that he did so act. The accountant was for a long time engaged in the banking and real estate business in Tyrone, a borough of about ten thousand population. He was familiar with real estate values. The Masonic Hall Association had erected

one of the most substantial buildings in Tyrone, to be used for masonic meetings, with storerooms and offices to rent, at a cost of about $120,000.

The association at first undertook to sell first mortgage bonds in the amount of $75,000 but later reduced the issue to $29,500, and of this issue the trustee, William Fuoss, purchased bonds in the amount of $5,000. He consulted John D. Meyer, president of the First National Bank of Tyrone, and Frank G. Albright, both of whom had extended business experience and were familiar with the value of the bonds and their worth as an investment. Mr. Meyer testified before the auditor as follows:

"Q. When the mortgage loan was put on on July 1, 1930, inquiry was made to determine from your own knowledge as a banker, business man and resident of Tyrone, what opinion you had regarding the investment and the value of the security at that time? A. I regarded it as perfectly good."

And Mr. Albright testified as follows:

"A. He asked me if I thought the bonds were a safe and secure investment and I told him that he could not make a better investment. Q. What is the character of the building erected by the Masonic Hall Association? A. Three storerooms on Pennsylvania Avenue, three storerooms on Eleventh Street and three office rooms facing Pennsylvania Avenue on the second floor and one office room, vacant, on the second floor and the banquet hall and dance hall on the second floor, rent out, and the lodge room on the third floor. Q. At the time of the completion of the building and when the bonds were sold, what was the estimated revenue to be received from the different rooms and offices? A. We estimated at the time the bonds were being sold that the revenue would be about $650 a month. Q. Is the building in a good location in Tyrone? A. The location is the best in Tyrone and in normal times there would be no trouble in renting all of the rooms and offices."

William Fuoss, the accountant, testified that he in-

vested his personal funds in the same bonds to the extent of $5,000. It is evident, therefore, that he exercised the same caution and care in making the investment for the estate that he did for himself, and the Supreme Court has said in Bartol's Estate, 182 Pa. 407, 410:

"Executors and administrators or trustees, acting with good faith and without any wilful default or fraud, will not be responsible for any loss that may arise. All that a court of equity requires is common skill, common prudence and common caution. Executors, administrators or guardians are not liable beyond what they actually receive, unless in case of gross negligence; for when they act as others do with their own goods, and with good faith, and are not guilty of gross negligence, they are not liable. . . . A court of equity . . . always treated trustees acting in good faith with great tenderness."

In the same case, on page 417, it is stated:

"The propriety of the investment must be judged as it was at the time it was made, and not as viewed in the light of subsequent facts. Of course these trustees could not foresee that a trolley road would be built through the same town, which would largely impair the business of this road, and they are not responsible for not possessing the quality of prevision which would anticipate such a result. . . . There was no question as to the entire good faith and integrity of the trustees and to their good business qualifications."

In the present case it may be said that there is no evidence to refute the conclusion that the trustee acted in entire good faith and with integrity and that he possessed good business qualifications. It was impossible for him to foresee the situation which later arose generally throughout the country through no fault of his but which made it impossible to rent storerooms and offices. We may conclude here, as was held in the case of Detre's Estate, 273 Pa. 341, that:

"All of the facts above stated, so far as they relate to matters preceding the purchase of the bonds, were then

known to the trustee; so it cannot be broadly affirmed that the investment was made rashly or in ignorance of the real status of the corporation. The mere failure of accountant to prove the money value of the Terre Haute Company's property did not justify the surcharge in the face of what was shown with reference thereto".

We believe that the judgment of the accountant is supported by the Supreme Court in the case of Jones' Estate, 314 Pa. 93, 98, as follows:

". . . it is unreasonable to exact from a fiduciary, acting prudently, who suffers a loss because of an extraordinary economic disturbance, higher knowledge, skill and diligence than is expected of prudent business men. We therefore hold in such cases that where loss occurs through no fault of executors or trustees, acting in good faith, but because of an extraordinary occurrence precipitating loss upon the honest and diligent and ignorant and slothful alike, the executors and trustees are not required to make good the difference in value from their own pockets, but may turn over the security or reduce it to cash and turn it over to the beneficiary."

From the evidence, we are of the opinion that the investment by the trustee, with which he is surcharged, was a prudent investment made in good faith, and that in normal times it will be worth full value.

The exceptions by the accountant to the surcharge by the auditor are, therefore, sustained and the accountant is entitled to a credit in said account for the full amount of the investment in the bonds of the Masonic Hall Association. The costs of the audit are to be paid by the estate.                    From Robert W. Smith, Hollidaysburg.