UNITED STATES of America, Plaintiff,

v.

William SIMMONS, Defendant.

Crim. No. 86–80413––01.

United States District Court,
E.D. Michigan, S.D.

Jan. 9, 1987.

Mark A. Miller, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Leroy T. Soles, Rita C. Martin, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

WOODS, District Judge.

Defendant William Simmons has challenged the sufficiency of the Government's service by mail of a notice that it intended to seek an enhanced sentence against him as a "dangerous special offender" (DSO). The Court finds that the Government failed to give defendant actual notice of its intention to proceed against him as a DSO. Accordingly, defendant's motion to dismiss the proceeding is GRANTED.

On June 9, 1986, defendant was arrested and charged with the offense of felon in possession of a firearm. On July 8, 1986, well in advance of trial, the Government filed a notice specifying that it would seek an enhanced sentence against defendant as a DSO, 18 U.S.C. § 3575,[1] if defendant was convicted of the alleged offense. In accordance with § 3575(a)[2] and F.R.Crim.P.

---

1. A "special offender" is an individual who (1) has two or more prior felony convictions besides the conviction for the underlying felony, (2) was imprisoned for one or more of the prior convictions, and (3) either committed one of the prior felonies or was released from imprisonment for one of those felonies within the last five years. 18 U.S.C. § 3575(e)(1). A special offender is "dangerous" if a period of imprisonment "longer that that provided for such felony is required for the protection of the public from further criminal conduct by the defendant." Id. § 3575(f). If it appears by a preponderance of the evidence at a sentencing hearing that an individual is a dangerous special offender, that individual shall be sentenced "to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony." Id. § 3575(b).

Congress, as part of its efforts to increase uniformity in sentencing, repealed this statute in 1984, effective November 1, 1987. Sentencing Reform Act of 1984, Pub.L.No. 98–473, § 235, 98 Stat. 1987 (1984), *amended by* Pub.L. 99–217, § 4, 99 Stat. 1728 (1985).

2. That subsection provides:

(a) Whenever an attorney charged with the prosecution of a defendant in a court of the United States for an alleged felony committed when the defendant was over the age of twenty-one years has reason to believe that the defendant is a dangerous special offender such attorney, a reasonable time before trial or acceptance by the court of a plea of guilty or nolo contendere, may sign and file with the court, and may amend, a notice (1) specifying that the defendant is a dangerous special offender who upon conviction for such felony is subject to the imposition of a sentence under subsection (b) of this section, and (2) setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender. In no case shall the fact that the defendant is alleged to be a dangerous special offender be an issue upon the trial of such felony, be disclosed to the jury, or be disclosed before any plea of guilty or nolo contendere or verdict or finding of guilty to the presiding judge without the consent of the parties. If the court finds that the filing of the notice as a public record may prejudice fair consideration of a pending criminal matter, it may order the notice sealed and the notice shall not be subject to subpena or public inspection during the pend-

49(e),[3] the Government simultaneously brought a motion to seal the DSO notice from potential jurors and this Court, prior to an adjudication of guilt or innocence. On July 8, 1986, the same day the Government filed the DSO notice and motion to seal, Judge Horace Gilmore of this Court granted the Government's motion to seal.

The jury trial commenced on September 22, 1986. The next day the jury returned a verdict of guilty against defendant. On October 2, 1986, the Government moved to unseal the notice, which Judge Julian Cook granted.

Defendant now moves to dismiss the Government's DSO notice and avoid the imposition of an enhanced sentence. He claims that he never received a copy of the Government's DSO notice prior to trial, and offers affidavits to that effect from his appointed counsel, co-counsel, and two secretaries. Defendant argues that his statutory right under § 3575(a) to inspect the DSO notice implicitly requires that the Government notify him or his counsel a reasonable time before trial of its intention to proceed against him as a DSO. *See United States v. Kelly*, 384 F.Supp. 1394, 1400 (W.D.Mo.1974) ("The procedure set forth in Section 3575(a) clearly contemplates that the defendant will be advised before trial or the entrance of a plea of guilty or nolo contendere of the intention of the United States to proceed under Section 3575, and of all matters required to be included in such notice."), *aff'd*, 519 F.2d 251 (8th Cir.1975). Defendant states that he was not given formal notice of the DSO proceeding until October 8, 1986. The following paragraphs from defendant's brief summarize the extent of his knowledge:

[After being appointed to represent Defendant on June 9, 1986,] counsel and the Assistant U.S. Attorney discussed the case in an attempt to resolve it short of trial. During these pretrial, pre-indictment negotiations the Assistant U.S. Attorney informed counsel that any plea would involve "double digits." Counsel interpreted this phrase as meaning that the prosecutor might file a special dangerous offender notice.

. . . .

Co-counsel Leroy Soles, having interpreted "double digits" as a veiled threat of a special dangerous offender notice and wanting to protect Defendant's rights in terms of apprising him and plotting trial strategy investigated the clerks office [sic] to see if notice had been filed. Co-counsel made visits to the clerks office, gave the clerk Defendant's name and asked if there was a miscellaneous number involving Defendant under seal. Co-counsel believed he would be able to surmise whether a notice had actually been filed if a sealed miscellaneous matter concerning Defendant was on file. However, co-counsel was advised by various court personnel that no sealed miscellaneous matter regarding Defendant had been filed.

Counsel and co-counsel continued their investigation post-trial, believing that the prosecutor might try to file the notice late (See the three attached file requests). Again counsel was told that no record of a miscellaneous filing existed.

---

ency of such criminal matter, except on order of the court, but shall be subject to inspection by the defendant alleged to be a dangerous special offender and his counsel.

**3.** F.R.Crim.P. 49(e) states as follows:

(e) Filing of Dangerous Offender Notice. A filing with the court pursuant to 18 U.S.C. § 3575(a) or 21 U.S.C. § 849(a) shall be made by filing the notice with the clerk of the court. The clerk shall transmit the notice to the chief judge or, if the chief judge is the presiding judge in the case, to another judge or United States magistrate in the district, except that in a district having a single judge and no United States magistrate, the clerk shall transmit the notice to the court only after the time for disclosure specified in the aforementioned statutes and shall seal the notice as permitted by local rule.

Subdivision (e) was added to F.R.Crim.P. 49 in 1985 to eliminate the uncertainty caused by the failure of Congress to specify in § 3575 where a DSO notice should be filed. F.R.Crim.P. 49 advisory committee's note to the 1985 amendment.

Defendant's Brief in Support of Motion to Dismiss, at 1–2.

The Government, on the other hand, argues that the Assistant United States Attorney justifiably assumed from the tenor of his conversations with defense counsel, that defense counsel were aware that the DSO notice had been filed. The Government further argues that the issue is not whether defendant received notice, but whether the Government met its obligations. According to the Government, since no mention of any special procedure governing service appears in § 3575(a), the manner of service is controlled by F.R. Civ.P. 49. F.R.Crim.P. 49(b),[4] in turn, incorporates the requirements found in F.R. Civ.P. 5(b). F.R.Civ.P. 5(b) provides:

> (b) [Service]: How Made. Whenever under these rules service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney unless service upon the party himself is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to him or by mailing it to him at his last known address or, if no address is known, by leaving it with the clerk of the court. Delivery of a copy within this rule means: handing it to the attorney or to the party; or leaving it at his office with his clerk or other person in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein. *Service by mail is complete upon mailing.* (emphasis added).

4. F.R.Crim.P. 49(b) provides:
> (b) Service: How Made. Whenever under these rules or by an order of the court service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party himself is ordered by the court. *Service upon the attorney or upon a party shall be made in the manner provided in civil actions.* (emphasis added).

The Government notes that courts have read F.R.Civ.P. 5(b) literally and held that because service is complete upon mailing, it is unaffected by non-receipt. *E.g., Greenspun v. Schlindwein*, 574 F.Supp. 1038, 1039 n. 1 (E.D.Pa.1983). *See generally* 4 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1148 (1969 & Supp.1985). The Government states that it met its obligation to provide notice to defendant when it placed a copy of the DSO notice in the United States Mail on July 7, 1986. Moreover, concludes the Government, the court file contains a certificate of service stating that the DSO notice was mailed to defendant in a Government franked envelope on July 9, 1986.

This Court, however, declines the Government's invitation to apply a rule of civil procedure to a criminal proceeding that subjects a defendant to an increased term of imprisonment of up to twenty-five years. The majority of courts that have held that service is complete upon mailing have done so in civil cases for the purpose of determining timeliness of pleadings, not adequacy of service. *See, e.g., Kim v. Commandant, Defense Language Institute, Foreign Language Center*, 772 F.2d 521, 524 (9th Cir.1985); *Kathriner v. City of Overland*, 602 F.Supp. 124, 126 (E.D.Mo. 1984). More importantly, the two courts to date that have considered sufficiency of service in the context of DSO proceedings have not relied on F.R.Civ.P. 5(b) or F.R. Crim.P. 49(b).

In *United States v. White*, 748 F.2d 257 (5th Cir.1984), the Government timely filed and served a notice of its intention to seek an enhanced sentence against the defendant under § 3575. Defendant was convicted and given an enhanced sentence. On

The advisory committee note to subdivision (b) expressly incorporates by reference F.R.Civ.P. 5(b):
> Note to Subdivision (b). The first sentence of this rule is in substance the same as the first sentence of Rule 5(b) of the Federal Rules of Civil Procedure. The second sentence incorporates by reference the second and third sentences of Rule 5(b) of the Federal Rules of Civil Procedure, 28 U.S.C., Appendix.

appeal, the conviction was reversed and the case remanded for retrial. Before the second trial, the Government gave the defendant oral notice of its intention to seek again an enhanced sentence against him. Despite receiving oral notice, the defendant failed to request a copy of the DSO notice from the court clerk, as permitted under § 3575(a). Defendant believed that the Government intended to rely on the same facts contained in the DSO notice filed before the first trial, a document of which the defendant had long had a copy. On his second appeal, defendant claimed that the enhanced sentence should be set aside because the Government failed to serve him formally in accordance with F.R.Crim.P. 49. *Id.* at 258–60.

The *White* court rejected defendant's claim and upheld the enhanced sentence. *Id.* at 260. According to the court, "[i]n the absence of formal service of the notice, the government must show that the defendant received *actual and adequate notice* of its intent to seek an enhanced sentence." *Id.* (emphasis added). The court reasoned that actual and adequate notice had been shown where the defendant admitted that he received oral notice in advance of the second trial and where the defendant retained a written copy of the first DSO notice, which was identical to the DSO notice filed in the second trial. *Id.*

*United States v. Darby,* 744 F.2d 1508 (11th Cir.1984), *cert. denied sub nom. Calise v. United States,* 471 U.S. 1100, 105 S.Ct. 2323, 85 L.Ed.2d 841 (1985), involved a notice of the Government's intent to seek an enhanced sentence against a defendant as a dangerous special drug offender under 21 U.S.C. § 849. In that case a certificate of service indicated that a copy of the notice had been mailed to defendant's counsel before trial. Counsel, however, did not become aware of the contents of the notice until after trial. Counsel's failure to receive the notice apparently resulted from the copy being lost in the mail and because of confusion in the court clerk's office. *Id.* at 1534 n. 27. The court nevertheless held that the Government complied with the statutory requirement of providing defend-

ant with notice of the potentially enhanced sentence "a reasonable time before trial." *Id.* at 1534. In so holding, the *Darby* court relied on the fact that the defendant "had been advised of the government's intent to prosecute under section 849 during plea negotiations and thus had received *actual notice* well in advance of trial." *Id.* (emphasis added). The court also rejected defendant's claim of prejudice attributable to the Government's late filing of the notice the day before jury selection. The court concluded that prejudice to the defendant was minimal given his actual notice of the Government's intent to seek an enhanced sentence. *Id.*

■ As the courts in *White* and *Darby* make clear, the Government must show that defendant received actual notice before trial. The Government has not made such a showing. This Court, having conducted a hearing and having heard arguments on this issue, is fully convinced that defense counsel never received the DSO notice filed by the Government before trial. Moreover, the Government's attorney assigned to this case admitted that no one in the United States Attorney's Office ever told defendant or his counsel that the Government had filed a DSO notice. Indeed, the Government simply assumed that defense counsel received the copy sent in the mail.

■ Defense counsel's suspicion that the Government intended to seek an enhanced sentence does not rise to the level of actual notice. Given defendant's background and the nature of the conversations between defense counsel and the Government's attorney, defense counsel had reason to believe that a DSO notice would be filed. Defense counsel could have cornered the Government's attorney and demanded to be told whether a DSO notice had been filed. Section 3575, however, imposes no responsibility on a defendant to ascertain from the Government whether a DSO notice will be filed. Instead, the responsibility to provide notice flows from the Government to the defendant.

■ When we consider that defense counsel were staff members of the Federal Defender Office in and out of the United States Attorney's Office on a near-daily basis, that defense counsel and the Government's attorney assigned to this case saw each other several times over a period of nearly four months, and that the Government provided defense counsel with discovery materials, it strikes this Court that the Government should be held to more than "resting on its oars," namely F.R. Civ.P. 5(b), or "double-digit" double-speak. Simple fairness requires that actual notice be shown from the facts, if not personal service in the technical sense.

Defendant's motion to dismiss is hereby GRANTED.

So ordered.