Daniel TAUBENFELD,
et al., Plaintiffs,

v.

HOTELS.COM, et al., Defendants.

Nos. CIV.A. 3:03–CV–0069–, 3:03–CV–0144–N, 3:03–CV–0279–N, 3:03–CV–0323–N.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 27, 2004.

Joe Kendall, Provost Umphrey Law Firm, Barry C. Barnett, Susman Godfrey, Dallas, TX, Debbie Branscum, Law Office of Debbie Branscum, Bedford, TX, Mark Solomon, Mary K. Blasy, Shaun Khojayan, Milberg Weiss Bershad Hynes & Lerach, Thomas E. Glynn, Lerach Coughlin Stoia Geller Rudman & Robbins, San Diego, CA, Darren J. Check, Schiffrin & Barroway, Radnor, PA, for Plaintiffs.

Lara M. Shalov, Richard A. Rosen, Paul Weiss Rifkind Wharton & Garrison, New York, NY, Patricia J. Villareal, Jones Day, Dallas, TX, Thomas E. Bilek, Hoeffner & Bilek, Houston, TX, for Defendants.

## *ORDER*

GODBEY, District Judge.

Before the Court is Defendants' Motion to Dismiss filed on October 31, 2003. For the reasons stated below, the Motion is GRANTED.

## I. BACKGROUND

This is a federal securities putative class action on behalf of those who purchased Hotels.com common stock between October 23, 2002, and January 6, 2003. On January 6, 2003, Hotels.com revised its fourth quarter revenue estimates for 2002, announcing that revenues would be 6–7% lower than its projections from the previous October. After this announcement, the stock price of Hotels.com fell to $44 per share, down from a high of $75 in early December 2002.

Plaintiffs bring suit under Sections 10(b) and 20A of the Securities and Exchange Act and Rule 10(b)(5) against Hotels.com, David Litman, Robert Diener, and Mel Robinson ("Defendants"). Plaintiffs also bring suit under 20(a) of the Securities and Exchange Act against Litman, Diener, and Robinson as control persons of Hotels.com. Plaintiffs allege that Defendants committed securities fraud by both affirmatively misrepresenting the financial state of the company and failing to disclose information material to the company's revenue. Plaintiffs allege five affirmative misrepresentations and two omissions.

### A. The October 23, 2002 Statements

The first alleged misrepresentation occurred in a Hotels.com press release that the Defendants approved, forecasting record levels of revenue and income. The second alleged misrepresentation occurred when *Bloomberg Television* aired an interview with Defendant Robert Diener in which Mr. Diener claimed that Hotels.com was seeing "a tidal wave of demand." The third alleged misrepresentation on this date occurred when an analyst with Janco Partners, Inc., allegedly relying on Hotels.com's statements, stated that Hotels.com was poised to exceed budgeted revenue for 2002.

### B. The November 19, 2002 Statement

On November 19, 2002, Richard Read, an analyst with Credit Lyonnais Securities, stated that he expected Hotels.com's growth historical growth rates to continue into the future, driven by online bookings and revenues. Plaintiffs contend that Mr. Read relied on Defendants' materially false statements.

### C. The December 12, 2002 Statement

Plaintiffs contend that Defendant Robert Diener appeared on Bloomberg Television and misrepresented that Hotels.com was continuing to be extremely profitable and that he expected the company to continue to be extremely profitable.

### D. The SEC Form 144 Statements

Defendants sold various amounts of their common stock between October 25 and December 3, 2002, and, in connection with each sale, filed SEC Form 144. In these forms, Plaintiffs allege that each Defendant misrepresented that he was not in possession of previously undisclosed materially adverse information regarding the securities just sold.

### E. The Cheaptickets.com Dispute Omission

Cheaptickets.com agreed to post a link to Hotels.com on its website. On October 22, 2002, Cheaptickets.com removed this link from its website and Hotels.com eventually filed suit seeking an injunction. Plaintiffs allege that Defendants' failure to ever disclose the dispute over the removal of the link was a material omission.

### F. The Potential Hotel Occupancy Tax Increase Omissions

Hotels.com is a wholesaler of hotel room bookings, purchasing these bookings from hotels on a discounted basis and selling them at a profit online. Hotels.com had historically paid hotel occupancy taxes on the discounted price it paid to the hotel rather than the price paid by the online consumer. During the class period, many local taxing authorities announced that they intended to tax wholesalers like Ho-

tels.com on the price ultimately paid by consumers. Plaintiffs allege that Defendants were aware of this impending increase in Hotels.com's tax liability and failed to disclose it during the class period.

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on several grounds, including the following: (1) the statements and omissions are protected by the Private Securities Litigation Reform Act's ("PSLRA"), 15 U.S.C. § 78u–5, safe harbor provision as forward-looking statements, (2) the allegedly fraudulent statements and omissions are immaterial, and (3) the failure adequately to allege that the analysts' statements are attributable to Defendants. The Court will examine these arguments in turn.

## II. THE PSLRA SAFE HARBOR

■ The requirements of the PSLRA generally are well-known and will not be addressed here except to the extent necessary for discussion. *See generally Rosenzweig v. Azurix Corp.,* 332 F.3d 854 (5th Cir.2003). Under the PSLRA, "any forward-looking statement" is not actionable so long as the statement is "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u–5(c)(1)(A)(i). The definition of a forward-looking statement includes statements containing a projection of revenues, income, or earnings per share; statements of the plans and objectives of management for future operations; and statements of future economic performance. 15 U.S.C. § 78u–5(i)(1). A statement that qualifies for this safe harbor is not actionable regardless of the defendant's state of mind. *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 235 F.Supp.2d 549, 575 (S.D.Tex.2002) (citing *Harris v. Ivax Corp.,* 182 F.3d 799, 803

(11th Cir.1999)). The Court holds that the October 23, 2002, press release falls within the PSLRA safe harbor.

■ Plaintiffs quote several paragraphs from Hotels.com's October 23, 2002, press release, placing particular emphasis on the following language:

> Based on actual results achieved in the first three quarters, as well as current business trends and plans, the company is presently trending towards: (a) exceeding 4th quarter budgeted revenue by 31–34%; (b) exceeding 4th quarter budgeted Adjusted EBITDA by 15–19%; and (c) exceeding 4th quarter budgeted Adjusted EPS by 12–15%. Q4 actual results will be partially affected by the launch timing of certain significant new affiliates, and the timing of rolling out the company's new technology platform to its affiliates.
>
> \* \* \* \* \* \*
>
> The company's preliminary budget for the year 2003 is: Revenue—$1.4 billion; Cash Net Income—$137 million; EBITDA—$205 million; and Cash EPS (diluted)—$2.28, Depreciation expense for 2003 is budgeted at approximately $5 million. These figures do not include the impact of future acquisitions, if any (except for Turbotrip, which was completed in early October, 2002).

This press release is forward-looking because it is a projection of the company's performance in the fourth quarter, which cannot be known until the fourth quarter has passed. *Harris v. Ivax Corp.,* 182 F.3d 799, 805 (11th Cir.1999) ("[A] statement about the state of a company whose truth or falsity is discernable only after it is made necessarily refers only to future performance."). Furthermore, the press release identified itself as "contain[ing] 'forward-looking statements' within the meaning of ... the Securities Exchange

Act of 1934, as amended." In addition to identifying itself as forward-looking, the October 23, 2002 press release contained meaningful cautionary language including the following:

The following important factors . . . may affect the future results of the company and cause those results to differ materially from those expressed in the forward-looking statements; material adverse changes in the economic conditions in the company's markets including as a result of terrorist actions; future regulatory actions and conditions in the company's operating areas; competition from others; product demand and market acceptance; the ability to protect proprietary information and technology or to obtain necessary licenses on commercially reasonable terms; and the ability to retain key executives and employees.

The press release also referred to Hotels.com's Form 10–K, which itself included pages of risk factors inherent in Hotels.com's business including:

competition from others; the ability to expand into and successfully operate in foreign markets; . . . .

&ast; &ast; &ast; &ast; &ast; &ast;

[Ability] to obtain arrangements with lodging suppliers similar to those we currently have . . . .

[Ability] to maintain our affiliations or obtain new affiliations with other travel service providers . . . .

[S]easonality and our reliance upon leisure travel . . . .

bad weather or natural disasters; fuel price increases; travel related accidents; hotel, airline or other travel-related strikes; or terrorism.

■ Such cautionary language may be incorporated by reference into a forward-looking statement to help meet the safe harbor requirement. *See Karacand v. Edwards,* 53 F.Supp.2d 1236, 1245 (D.Utah 1999) (analogizing the PSLRA safe harbor provision to the bespeaks caution doctrine wherein the cautionary language need not be in the same document as the alleged misstatement or omission.) The Court finds these cautionary statements meaningful and that the press release is not an actionable misrepresentation, regardless of Defendants' intent. Because this statement is not actionable as a matter of law, granting leave to amend the Plaintiffs' pleading regarding this statement would be futile. A dismissal with prejudice is appropriate when amending a complaint would be futile. *Schiller v. Physicians Res. Group, Inc.,* 342 F.3d 563, 566 (5th Cir.2003). Accordingly, the consolidated complaint is dismissed with prejudice as to this statement.

### III. MATERIALITY

■ In order to be actionable, a misrepresentation or omission of information must be material. *ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F.3d 336, 348 (5th Cir.2002). Materiality in turn requires a substantial likelihood that a reasonable investor would consider the information to have significantly altered the total mix of information about investing in the company. *Id.* at 361. Statements worded as vague optimism, not phrased in terms of guarantees, are not actionable under federal securities law because reasonable investors will not rely on them. *See Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 869 (5th Cir.2003); *In re Sec. Litig. BMC Software, Inc.,* 183 F.Supp.2d 860, 888 (S.D.Tex.2001). When dealing with a failure to disclose negative financial information, the impact of that disclosure must also have been material to a reasonable investor. *See Romine v. Acxiom Corp.,* 296 F.3d 701 (8th Cir.2002).

■ The Court finds the following alleged misstatements and omissions to be

immaterial as a matter of law: (1) Mr. Diener's October 23, 2002, Bloomberg Television statement, (2) Mr. Diener's December 12, 2002, Bloomberg Television statement, (3) the failure to disclose the Cheaptickets.com dispute, and (4) the failure to disclose the potential occupancy tax increase. In the October 23, 2002, interview, Mr. Diener is quoted as saying that "we're not seeing any slowing .... [W]e're seeing very large increases and we expect that to continue. And ... we're still ... doing incredibly well." In the December 12, 2002, interview, Mr. Diener is quoted as saying "we're seeing very strong growth" and "we are extremely profitable."

Plaintiffs allege that these statements are false, not because Hotels.com was not growing or not profitable as Mr. Diener claimed, but rather because Hotels.com was not growing at the rate implied in these statements. Hotels.com was indeed growing, both in terms of revenue and net income. Between 2000 and 2002, revenue increased from approximately $328 million to approximately $945 million, and net income increased from around $10 million to more than $70 million. Therefore, Plaintiffs contend that the growth was not "strong" and that Hotels.com was not "extremely" profitable. These statements are vague assertions of the condition of the company on which no reasonable investor would rely. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869–70 (5th Cir.2003).

In *Rosenzweig*, stockholders of Azurix, an international water and wastewater company, sued the company and its directors. *Id.* at 858–59. Azurix acquired a "concession" from Buenos Aires, Argentina, to operate a water and wastewater system for 30 years. *Id.* at 859. Plaintiffs alleged that the defendants knew the concession was plagued with water quality problems and disputes over tariffs when they made optimistic statements about

Azurix's business. *Id.* at 860–61. These statements include that Azurix's "fundamentals are strong," that the company "was making steady progress," and that "[t]he pipeline of private transactions and announced public tenders that we are pursuing remains strong ...." *Id.* at 860. The Fifth Circuit held these statements were "precisely the sort of generalized positive characterizations that [are] not actionable under the securities laws." *Id.* at 870. Consequently, the Court affirmed the dismissal of the complaint as to each of these statements on immateriality grounds. *Id.* at 869; *see also San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 811 (2d Cir.1996) (finding statement that the company "should deliver income growth consistent with its historically superior performance" to be immaterial puffery). Here, Defendants also make generalized positive statements about strong growth and extreme profitability. As in *Rosenzweig*, these statements are immaterial as a matter of law. Accordingly, since no amendment could make these statements actionable, Plaintiffs' complaint is dismissed with prejudice as to these statements. *See Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

■ In addition, Plaintiffs allege that the Defendants' failure to ever disclose the dispute with Cheaptickets.com over the link to Hotels.com was a material omission. Even indulging Plaintiffs and inferring that Defendants knew as early as October 23 that the dispute would cost Hotels.com $50,000 per day in revenue, such a cost, while seemingly considerable in absolute terms, is immaterial as a matter of law. Such a loss would result in approximately $4 million in lost revenues for the fourth quarter, which, expressed as a percentage, is less than 1.5% of fourth quarter reve-

nue. *See Romine v. Acxiom Corp.*, 296 F.3d 701, 706–07 (8th Cir.2002) (holding that $2.3 million reserve adjustment on $211.5 million in revenues for a 1.09% difference, was not a material difference); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 547 (8th Cir.1997) (holding that a 2% overstatement of accounts was immaterial); *Glassman v. Computervision*, 90 F.3d 617, 633 (1st Cir.1996) (holding that a 3% to 9% difference in backlog as a percent of revenue was immaterial); *In re Convergent Tech. Sec. Litig.*, 948 F.2d 507, 514 (9th Cir.1991) (holding a 1.5% difference between financial forecast and actual results was immaterial). Plaintiffs rely heavily on the transcript of the injunction hearing, wherein Defendants Robinson and Litman allegedly admitted the materiality of the loss of revenue to Hotels.com. However, Plaintiffs fail to distinguish between "materiality" of the harm required to obtain injunctive relief with materiality of the misrepresentation or omission as required by securities law. Here, the potential magnitude of the Cheaptickets.com dispute, in comparison to Hotels.com's revenue, is not material as a matter of law.

■ Plaintiffs also allege that Defendants' failure to disclose the possible hotel occupancy tax increase was a material omission. In February 2003, Hotels.com announced that it was establishing a reserve of $1.35 million to pay for the potential increase in hotel occupancy taxes. Plaintiffs make no allegation that this amount is insufficient or is somehow understated. As with the Cheaptickets.com dispute, this amount may seem significant in absolute terms. However, when viewed as a percentage of fourth quarter revenue at $272.6 million, the reserve accounted for less than one half of 1% of such revenue. This effect is immaterial as a matter of law. *See In re Westinghouse Secs. Litigation*, 90 F.3d 696, 715 (3d Cir.1996) (failure to record a loss reserve of $1.278 million

was immaterial when compared with net income of $234 for the relevant quarter).

Plaintiffs also alleged that the Defendants' Form 144 Statements were misleading due to the Defendants' failure to disclose materially adverse information regarding the securities Defendants sold during the class period. Plaintiffs allege only two omissions in the consolidated complaint—the failures to disclose the Cheaptickets.com dispute and the hotel occupancy tax increase. As discussed above, both of these alleged omissions are immaterial as a matter of law. Accordingly, the complaint is dismissed with prejudice as to the two alleged omissions and the SEC Form 144 statements since Plaintiff could plead no set of facts entitling him to relief. *See Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 566 (5th Cir.2003).

### IV. ANALYST STATEMENTS

■ As a general rule, defendants are not liable for statements made by third parties. *Williams v. WMX Tech. Inc.*, 112 F.3d 175, 179 (5th Cir.1997). However, if a plaintiff can adequately plead specific facts showing how a defendant controlled the content of the analyst's statement, the defendant may be held liable for such statement. *In re Azurix Corp. Sec. Litig.*, 198 F.Supp.2d 862, 886 (S.D.Tex.2002); *see also Raab v. General Physics Corp.*, 4 F.3d 286, 288 (4th Cir.1993) (dismissing a complaint under Rule 9(b) for failure to adequately plead how the Defendants controlled the analyst's statement); *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 163 (2d Cir.1980) (finding no liability absent allegations that company "sufficiently entangled itself with the analysts' forecasts to render those predictions 'attributable to it.' ").

■ Plaintiffs allege that two analysts made statements relying on Defendants'

false and misleading statements. The first of these occurred on October 23, 2002, when Janco Partners, Inc. stated that Hotels.com was "now tracking to exceed full year revenue budget by 23–24% . . . ." The second analyst statement occurred on November 19, 2002, when Richard Read of Credit Lyonnais Securities stated that he expected Hotels.com's continuing growth to be "driven primarily by growth in online room nights and revenues." As to each statement, Plaintiffs allege only that the analysts relied upon and repeated false and misleading statements about Hotels.com. These conclusory allegations fail to establish the specific facts from which the Court can infer that Defendants controlled or entangled themselves with these analysts. However, it is possible that Plaintiffs could amend their complaint to state a claim regarding the analysts' statements. Accordingly, the complaint is dismissed without prejudice as to these analysts' statements.

For the foregoing reasons, Defendants' Motion to Dismiss the Consolidated Complaint is granted and Plaintiffs' claims are dismissed, partially with prejudice and partially without prejudice. Plaintiffs' request for leave to amend is granted; plaintiff must file any amended complaint within thirty (30) days of the date of this Order.