*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0439a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

J&R MARKETING, SEP, et al.,

        *Plaintiffs-Appellants,*

    *v.*

GENERAL MOTORS CORP., et al.,

        *Defendants-Appellees.*

No. 07-1411

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-10201—Nancy G. Edmunds, District Judge.

Argued: February 7, 2008

Decided and Filed: December 5, 2008

Before: KENNEDY, MARTIN, COLE, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Jacob A. Goldberg, FARUQI & FARUQI, Huntington Valley, Pennsylvania, for Appellants. Robert J. Kopecky, KIRKLAND & ELLIS, Chicago, Illinois, for Appellees. **ON BRIEF:** Jacob A. Goldberg, FARUQI & FARUQI, Huntington Valley, Pennsylvania, Jamie R. Mogil, FARUQI & FARUQI, New York, New York, Stephen F. Wasinger, Royal Oak, Michigan, for Appellants. Robert J. Kopecky, Timothy A. Duffy, KIRKLAND & ELLIS, Chicago, Illinois, Dennis M. Barnes, BARRIS, SOTT, DENN & DRIKER, Detroit, Michigan, for Appellees.

---

**SECOND AMENDED OPINION**

---

    KENNEDY, Circuit Judge. Plaintiffs, purchasers of bonds registered by GMAC in September 2003, brought suit under Sections 11 and 12(a)(2) of the Securities Act of 1933 against GMAC and its control persons, including General Motors, which at the time wholly-owned GMAC. Plaintiffs alleged that GMAC had breached its disclosure obligations as well as made material misstatements in its registration statements and prospectuses for multiple offerings of bonds registered in 2003 and 2004. The defendants moved to dismiss the plaintiffs' complaint for failure to state a claim. The district court granted the defendants' motion. It found that plaintiffs lacked statutory standing to bring claims regarding offerings other than the one in which they had purchased. The district court also found that the plaintiffs had no claim regarding a duty to disclose because Item 303, the regulatory authority relied on by plaintiffs, did not give rise to a duty to disclose the information the plaintiffs sought because the information was not "firm specific" to

1

GMAC. Additionally, the district court found that there was no material omission because the affirmative statements made by GMAC were not rendered misleading by the absence of the information cited by plaintiffs. Lastly, the district court held that most of GMAC's statements were not false, and the ones that were arguably false were not material to bond investors. We find that the named plaintiffs' own claims are without merit because the offering materials did not have material omissions because (1) Item 303 only imposes a duty to make forward-looking projections regarding known information, and plaintiffs pleaded only that the information was "knowable"; and (2) GMAC's affirmative statements were not rendered misleading by the absence of the information described by plaintiffs. We also find that the offering materials for the offering in which plaintiffs' purchased did not include material misstatements, because the affirmative statements made by GMAC were in fact true. Since the named plaintiffs' individual claims cannot succeed on the merits, we AFFIRM the judgment of the district court dismissing plaintiffs' complaint.

## BACKGROUND

General Motors Acceptance Corporation (GMAC) is a financial services corporation whose largest source of revenue comes from providing financing for those who purchase vehicles from General Motors (GM), GMAC's parent corporation. GMAC's profit is derived from borrowing money at a certain interest rate, and then lending money at a higher interest rate; its earnings are derived from this interest-rate spread. GMAC's credit rating, then, is important to its profit margin because the higher its credit rating, the larger the interest rate spread and the greater GMAC's profit.

One source from which GMAC borrowed was the general public. GMAC would publicly offer debt securities such as those purchased by plaintiffs. The debt securities had a coupon rate, which is the rate of interest GMAC would pay, as well as a yield, which was the payments GMAC would make over the life of the security not including the return of the principal. At the time the last interest payment was due, GMAC would return the principal to the investor.

GMAC typically calculated the coupon rate it offered on its debt securities based on its credit rating. Credit ratings are determined by credit rating agencies. These private agencies form opinions regarding an issuer's risk of default. The risk of default is tied to the financial condition of a company, with particular focus on the company's equity cushion. This means that the more a company's assets exceed its debts and liabilities, the less the company's risk of default (i.e. the safer the investment). Due to the market's faith in the credit agencies, an issuer must typically offer higher rates of interest when it has received a lower credit rating.

The plaintiffs in this case are investors who purchased Second SmartNotes, which were bonds registered by GMAC in September 2003. The plaintiffs also seek to represent a class of all investors who purchased bonds registered by GMAC in 2003 and 2004 and sold between July 21, 2003 and November 9, 2005. They allege that GMAC's conduct similarly injured all members of the purported class.

The plaintiffs allege that GMAC's offering materials filed between 2003 and 2004 suffered from material omissions and misstatements in violation of Section 11 and Section 12(a)(2) of the Securities Act of 1933. They contend that while GMAC disclosed that its performance and credit rating were closely related to GM's performance and credit rating, GMAC failed to disclose or misstated material information regarding GM's performance and credit rating, which, if disclosed, would have adversely affected GMAC's credit rating. Specifically, they claim that GMAC should have disclosed that GM overstated its cash flow for fiscal years 2002 and 2003, the extent of GM's pension liability for Delphi, and that GM's net income had been inflated by an improper accounting for supplier rebates. Additionally, plaintiffs claim that by failing to disclose this information, GMAC's credit rating and the coupon rate it offered on its bonds were rendered false and misleading. The plaintiffs further assert that this information was required to be contained within

the registration statements for the bonds by Regulation S-K. Lastly, plaintiffs aver that GMAC materially misstated its financial results in 2004. Plaintiffs state in their complaint, however, that they do not allege fraud on the part of any defendant.

Plaintiffs claim that these material omissions and misstatements injured the purported class. Specifically, plaintiffs allege that, had they known this information about GM, they would have not purchased GMAC's debt securities because GMAC was offering too low of a coupon rate. The plaintiffs claim that if they were aware of the undisclosed financial risks faced by GM, they would have demanded a higher interest rate for their investment in GMAC, and therefore they accepted a risk they otherwise would not have, absent a higher interest rate.

When this questioned information was disclosed to the public, the plaintiffs allege that both GM's and GMAC's credit rating fell. Both credit ratings were reduced to below investment grade in light of the previously undisclosed information. Id. This reduction in credit rating in turn reduced the secondary market value of the debt securities plaintiffs had purchased.

The defendants moved for dismissal of the plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6). They contended that the plaintiffs did not have standing to bring any claims, on behalf of a purported class or otherwise, relating to offerings in which the plaintiffs had not purchased bonds. Furthermore, they asserted that the offering materials for the Second SmartNotes offering, the offerings from which the plaintiffs had purchased their bonds, did not suffer from material omissions or misstatements, and therefore plaintiffs have failed to state a claim on which relief could be granted.

The district court agreed with the defendants and granted the motion to dismiss the plaintiffs' complaint. First, the district court held that, despite the purported class action, the plaintiffs failed to establish statutory standing to bring claims regarding offerings in which they had not purchased. The district court then went on to hold that GMAC owed no duty to disclose information about GM because an issuer only has to disclose information about itself, not its parent corporation. The court further held that GMAC's affirmative representations were not rendered misleading by the absence of the information plaintiffs desired because those representations referred to general ties between GMAC and GM, and the statements did not incorporate or in any way warrant the accuracy of GM's publicly disclosed information. Lastly, the district court held that while GMAC did restate its disclosed financial results for fiscal year 2004, that restatement was immaterial as a matter of law. The plaintiffs now appeal that judgment.

### ANALYSIS

Plaintiffs argue on appeal that the district court erred in granting the defendants' motion to dismiss. First, plaintiffs argue that they have statutory standing to bring the claims belonging to the alleged class, including all purchasers of bonds GMAC registered in 2003 and 2004. Second, plaintiffs allege that the district court was incorrect in concluding that they had failed to state a claim for relief. They assert that GMAC failed to disclose certain information that it was required to disclose about GM either because it had a duty to disclose that information or because that information was required so as to not render other statements GMAC had made misleading, thereby violating § 11 and § 12(a)(2) of the Securities Act of 1933. *See* 15 U.S.C. §§ 77k(a), 77*l*(a) (2006). Additionally, they assert that GMAC also violated the Securities Act by misstating material information in both the registration statement and the prospectus. Lastly, plaintiffs assert that the control persons of GMAC, namely General Motors, should be held liable under § 15 of the Securities Act of 1933. *See* 15 U.S.C. § 77o (2006).

We conduct de novo review of a district court's decision to dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Campbell v. PMI Food Equip.*

*Group, Inc.*, 509 F.3d 776, 780 (6th Cir. 2007). When conducting such review, we generally accept the factual allegations contained in the plaintiffs' complaint as long they rise above the level of speculation. "We need not, however, accept as true legal conclusions or unwarranted factual inferences." *Id.* at 780-81. We can also affirm on grounds other than those accepted by the district court. *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 671 (6th Cir. 2003).

## I. Statutory Standing

Sections 11 and 12(a)(2) create causes of action founded on misleading statements, misstatements, or omissions in a registration statement or a prospectus, respectively. 15 U.S.C. § 77k(a), (a)(2) (2006). Because both causes of action are tied to an offering document or oral communication, only those who acquired securities in the offering to which the document or oral communication pertains have standing to sue. *Id.* Based on this rationale, the district court found that the named plaintiffs in this case lacked statutory standing to sue regarding ten of the named offerings, because the named plaintiffs had purchased bonds only in the Second SmartNotes offering.

While we have grave concerns about such an analysis, we need not reach the question regarding the named plaintiffs' standing to represent the alleged class. If it is found, prior to class certification, that the named plaintiffs' individual claims are without merit, then dismissal is proper. *See, e.g.*, *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998); *Shipp v. Memphis Area Office*, 581 F.2d 1167, 1171-73 (6th Cir. 1978); *see also Kim v. Commandant*, 772 F.2d 521, 524 (9th Cir. 1985) (per curiam). Because we find below that plaintiffs' claims are meritless, we need not address whether they would have had standing to represent the purported class.

## II. Alleged Violations of § 11 and § 12(a)(2) of the Securities Act of 1933

Plaintiffs allege that defendants violated § 11 and § 12(a)(2) of the Securities Act by omitting material facts they had a duty to disclose and by misstating material facts. Section 11 imposes a duty of disclosure for an issuer's registration statement. It holds liable any issuer who fails to disclose "a material fact required to be stated therein." 15 U.S.C. § 77k(a). Sections 11 and 12 both impose a duty to disclose additional facts when a statement of material fact made by the issuer is misleading, and they both impose liability for failing to fulfill that duty of disclosure as well as for misstating a material fact. *Id.*; 15 U.S.C. § 77*l*(a)(2).

### A. Violation by Omission

Plaintiffs allege that defendants violated the Securities Act by omitting information it was required to include in the registration statement. *See* 15 U.S.C. § 77k(a). There are two accepted methods of determining whether a duty exists for the offeror to disclose certain information in the context of a public offering. First, an offeror is duty-bound to disclose all material information required to be disclosed by statute. *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 669 (6th Cir. 2005); *see also* 15 U.S.C. § 77k (stating that a person is liable when a registration statement omits a material fact "required to be stated therein"). Second, an offeror has a duty to disclose any additional information required to make another statement, whether required or voluntarily made, not misleading. *Rubin v. Schottenstein*, 143 F.3d 263, 268 (6th Cir. 1998) (en banc). The plaintiffs additionally urge that insider trading analysis should give rise to a third circumstance under which a company making a public offering has a duty to disclose. *Cf. City of Monroe Employees Ret. Sys.*, 399 F.3d at 669. We analyze each in turn.

### 1. Statutorily-Mandated Disclosure

Plaintiffs allege that GMAC was required to disclose that GM had overstated its cash flows for fiscal years 2002 and 2003, that GM had a multi-billion dollar pension liability for Delphi, and

that GM had incorrectly accounted for supplier rebates, which inflated GM's net income in quarters to which the supplier rebates were not attributable. Plaintiffs allege that this information falls under Regulation S-K, Item 303's disclosure requirements. *See* 17 C.F.R. § 229.303(a) (2006). Specifically, plaintiffs cite Item 303's demands that the registrant (1) "provide such other information that the registrant believes to be necessary to an understanding of its financial condition, changes in financial condition and results of operations," § 229.303(a); (2) include "other statistical data the registrant believes will enhance a reader's understanding of its financial condition," *id.* at Instruction 1; and (3) "[i]dentify any known trends or any known demands, commitments, events or uncertainties that will result in or that are reasonably likely to result in the registrant's liquidity increasing or decreasing in any material way," § 229.303(a)(1).

Neither of the first two citations to § 229.303(a) provide support for plaintiffs assertions in this case. The language and context of the first two requirements cited make clear that they only require the registrant to provide information regarding the results *that have already occurred. See, e.g.*, 17 C.F.R. § 229.303(a), Instruction 1 ("Generally, the discussion shall cover the three[-]year period covered by the financial statements . . . ."). Plaintiffs do not allege that the undisclosed information had an effect on GMAC's current, reported "financial condition," etc. Plaintiffs are instead claiming that this information, when disclosed, would impact GMAC's condition, and that GMAC had a duty to disclose that information because it would have a future effect.

Section 229.303(a)(1)'s mandate imposes a forward-looking duty, but we do not think it extends as broadly as plaintiffs contend. The section requires GMAC to "[i]dentify any known trends or any known demands, commitments, events or uncertainties that will result in or that are reasonably likely to result in the registrant's liquidity increasing or decreasing in any material way." "Liquidity" is defined as "the ability of an enterprise to generate adequate amounts of cash to meet the enterprise's needs for cash." § 229.303(a), Instruction 5.

The problem for the plaintiffs is that they do not contend that GMAC had any knowledge about the information at GM.[1] Instead, they specifically only contend that the information was "knowable" to GMAC. *See, e.g.*, Pls.' Reply Br. at 10 (citing paragraph 22 of the complaint, which lists directors of GMAC and the positions some of them had in GM, for support that the plaintiffs pleaded that it was knowable, rather than known, information). "Knowable," then, extends the duty to disclose information to include a duty to first investigate and then disclose. This, however, directly contradicts the text of Item 303, which only requires disclosure of "*known* trends or any *known* demands, commitments, events or uncertainties . . . ." 17 C.F.R. § 229.303(a)(1), (2)(ii), (3)(ii).[2]

---

[1] As an aside, there is also some suggestion in plaintiffs' complaint that a reduction in GMAC's credit rating would not materially harm GMAC's liquidity. For instance, GMAC indicated that even if its credit rating was degraded, it would be able to "adjust [its] funding and business strateg[ies] as necessary to meet GMAC's liquidity requirements," even though obtaining funding would cost more. *See* J.A. at 128-29 (Compl. ¶¶ 61-62). Additionally, in 2005, Moody's indicated that GMAC continued to have " 'intrinsic credit strengths, including its resilient earnings and strong liquidity.' " J.A. at 146 (Compl. ¶ 101).

[2] Defendants make an additional argument, which the district court accepted, namely that GMAC would never have a duty to disclose this information because it is not "firm-specific." Defs.' Br. at 20-24; J.A. at 175 (Mem. Op. at 13 n.15). They draw this requirement from *Wieglos v. Commonwealth Edison Co.*, 892 F.2d 509 (7th Cir. 1989). They contend that *Wieglos*'s conception of "firm-specific" information only encompasses information that emanates from within the company. This would mean, therefore, that even if GMAC had known about the problems at GM, and even if GMAC was certain of the negative effect the disclosure of those problems would have on its liquidity, GMAC still would not have to disclose that information. First, we note that the Seventh Circuit was discussing an issuer's duty to disclose under Item 103, rather than Item 303. *Wieglos*, 892 F.2d at 516. Regardless, we need not address *Wieglos* nor the concept of "firm-specific" information because we find that, absent a contention that GMAC knew of this information, there was no duty to disclose under Item 303.

Plaintiffs attempt, but fail, to overcome the plain text of Item 303 by pointing to the fact that Section 11 does not require scienter. Section 11, however, only imposes strict liability on those who fail to include information "required to be stated" in the registration statement. 15 U.S.C. § 77k(a). Some of the duties of disclosures, the breaches of which Section 11 makes actionable, do require knowledge. This includes Item 303, which only imposes a duty to make forward-looking projections regarding information known to the registrant. 17 C.F.R. § 229.303(a)(1), (2)(ii), (3)(ii). Section 11 does not amend Item 303's requirement of knowledge. Instead, Section 11 does not impose a further requirement of knowledge, as a fraud action would. If it did, the plaintiff would have to prove that (1) defendant knew of an event that was reasonably likely to impact its liquidity (thereby having a duty to disclose under Item 303); and that (2) defendant knowingly failed to disclose this information when preparing its registration statement (thereby violating a version of Section 11 that had a knowledge requirement). Defendants therefore would presumably be able to defend such an action by claiming that while it was aware of the information at one time (thereby giving rise to the Item 303 duty), it had forgotten the information when preparing the registration statement (thereby immunizing it from liability under Section 11). While Section 11 does not require any additional knowledge, that does not change the fact that the duty of disclosure arising from Item 303 does require knowledge.

### 2. Disclosure Required to Render Statements Not Misleading

Plaintiffs allege that GMAC disclosed information that misled investors into believing something untrue because GMAC did not also disclose other, contextual information. Specifically, plaintiffs claim that GMAC's disclosed credit rating and the coupon rate on its bonds were materially misleading, that GMAC's disclosed "inextricable links" with GM were materially misleading, and that GMAC's statements that GM had "overall improvement" and that the "outlook for GM improved" were materially misleading.

### a. GMAC's Credit Rating and Coupon Rate

GMAC's disclosed credit rating and coupon rate on its bonds were not materially misleading. The plaintiffs assert that when GMAC disclosed the credit rating it was assigned by credit ratings agencies, it was warranting that the rating was an accurate reflection of its risk of default. Additionally, the plaintiffs contend that when GMAC attached a coupon rate to its bonds, it was warranting that this was the correct market rate of interest for GMAC to pay given GMAC's risk of default. Neither of these assertions are valid.

GMAC did not warrant its credit rating, and therefore cannot be held to have misled investors when disclosing it. A person "misleads" another when he says something and the communication can also be fairly understood to mean something materially different than what the speaker states. When GMAC disclosed its credit rating, it generally said something along the lines of, "Standard & Poor's has [upgraded/downgraded] our credit rating to [X] because it was concerned about [Y]." The question, then, is whether, by disclosing its credit rating, GMAC was implying that the credit rating agency's opinion regarding GMAC's risk of default was accurate and should be relied upon.

GMAC's disclosure of its credit rating was merely a true statement of historical fact. Credit ratings are unique. Investors consider credit rating agencies' opinions important, and investors want to know those opinions, regardless of whether the company agrees or disagrees with the agencies' opinions. *See, e.g.,* Frank Partnoy, *The Siskel and Ebert of Financial Markets?: Two Thumbs Down for the Credit Rating Agencies*, 77 WASH. U. L.Q. 619, 621-22 (1999); *see also* Frank Partnoy, *How and Why Credit Rating Agencies Are Not Like Other Gatekeepers*, *in* FINANCIAL GATEKEEPERS 59, 59-61 (Yasuyuki Fuchita & Robert E. Litan, eds., 2006) [hereinafter FINANCIAL GATEKEEPERS] (referring to credit rating agencies as "financial market gatekeepers" and describing how investors

consider credit ratings important and rely on them as independently valuable); Justin Pettit, *Comment by Justin Pettit*, *in* FINANCIAL GATEKEEPERS 100, 100-01 (similar). The investors do not allege that GMAC lied to or misled the credit rating agencies, and there is no allegation in the complaint that would support such an assertion.[3] The opinions, then, were arrived at through the agencies' usual methods, and all information they requested from GMAC to formulate their opinion was provided.[4] Their opinions, therefore, were accurate according to the agencies' methods for determining risk of default.[5] Because investors assigned independent meaning to the credit rating assigned by the agencies, they would not assume, absent any language to the contrary, that GMAC was in any way warranting the accuracy of the rating. *See, e.g.*, *In re Detre's Estate*, 117 A. 54, 56 (Pa. 1922) (holding that a trustee had not breached his fiduciary duty by investing in certain railroad bonds partly because Moody's had given the bonds a "very high" credit rating); *accord In re Winburn's Will*, 249 N.Y.S. 758, 762-63 (N.Y. Sur. Ct. 1931) (finding certain securities to be "seasoned" rather than "speculative" due to the credit rating they had received from Moody's). Neither would the investors assume that, without saying so, GMAC was agreeing or disagreeing with the credit rating agencies' reasons for upgrading or downgrading GMAC's credit rating. GMAC's disclosure of its credit rating, therefore, was not materially misleading.

The coupon rate on the bond was not misleading for similar reasons. The coupon rate was in fact true–it accurately stated the amount of interest that GMAC would be paying on the bonds. GMAC never went further and stated that the coupon rate was the fairest rate of interest for it to pay investors or that it somehow reflected GMAC's entire risk of default. A reasonable investor reads the coupon rate and takes from it that GMAC was willing to pay a certain rate of interest on its bonds. A reasonable investor would then investigate whether or not she or he was willing to accept that rate of interest for the investment, not assume, absent a statement to the contrary, that GMAC had incorporated all material information into its determination of the coupon rate and rely solely on that. The coupon rate, therefore, was not materially misleading.

### b. GMAC's "inextricable links" with GM

GMAC's statement regarding its "inextricable links" with GM was similarly not materially misleading. The plaintiffs' main error in believing the statement misleading is their misconception of the law as imposing a broader duty of disclosure than it actually does. The plaintiffs believe that if GMAC says " 'anything' about [a topic] or [] discusse[s] the 'subject,' " that GMAC then must disclose all "material, non-public, adverse information" about that general topic or subject. Pls.' Br. at 20-22. For instance, plaintiffs claim that when GMAC raised the issue of GM's performance

---

[3] As noted previously, plaintiffs specifically assert that they "do not intend to allege, and have not alleged, fraud on the part of any Defendant."

[4] Plaintiffs seem to argue in their brief that because GMAC disclosed its credit rating, it is warranting that all information necessary to assess that rating is disclosed. Plaintiffs have no support for this assertion because they do not point to regulations requiring such disclosure, nor do they point to a statement made by GMAC that it had in fact made such disclosure. There is, in fact, regulatory authority that indicates credit ratings agencies' can have material, nonpublic information about a corporation when formulating a credit rating. Regulation F-D prohibits a corporation from making selective disclosures of nonpublic, material information by requiring public disclosure once the private disclosure has been made. 17 C.F.R. § 243.100(a) (2006). The regulation provides an exception to mandated public disclosure, however, when the nonpublic, material information is provided to credit ratings agencies. *See* 17 C.F.R. § 243.100(b)(2)(iii).

[5] Plaintiffs do allege that GMAC kept its rating artificially high by failing to disclose certain information about GM. This would mean that GMAC purposely lied to or misled the credit ratings agencies (i.e. doctored documents or did not provide all the information the agencies requested). Such a scenario would amount to fraud on the part of GMAC, because while it was accurately reporting the credit rating it was assigned, that credit rating was fraudulently obtained. Plaintiffs, however, disavow any intention to plead fraud.

being important to GMAC, GMAC was then required to disclose all "material, non-public, adverse" information it knew about GM. This is surely not the law.

A company has to disclose additional information only when what it has disclosed would be rendered misleading without that additional information. *See* 15 U.S.C. §§ 77k(a), 77*l*(a)(2). GMAC's statement that it has "inextricable links" with GM is not misleading. The plaintiffs have not even alleged what other, untrue fact investors were misled into believing by that statement. This is probably because the statement does not lead any reasonable investor into believing anything about GM's condition. GMAC was not in any way stating that GM was doing well, that GM's disclosures were all completely accurate, or anything else. GMAC was merely making a true statement regarding its ties with GM, its parent company.

The plaintiffs' expansive notion of the law comes from selective quotations from one of our prior cases and two cases from other circuits. They quote *Helwig v. Vencor*, 251 F.3d 540, 561 (6th Cir. 2001) (quoting *Rubin v. Schottenstein*, 143 F.3d 263, 268 (6th Cir. 1998) (en banc)), for the proposition that an issuer must " 'provide complete and non-misleading information with respect to subjects on which he undertakes to speak.' " While reference to "subjects" might support the plaintiffs' contentions, further reading of the case clearly disavows them. The defendant in *Helwig* had publicly disclosed its alleged inability to determine the impact a bill pending in Congress would have on its performance, and had also disclosed projections regarding its future earnings. 251 F.3d at 545-46. In fact, however, the defendant had completed an internal assessment of the bill and had concluded that it would have a grave impact on future earnings. *Id.* The defendant, therefore, had either misstated the facts, or it had misled investors because, while it may have meant that no definitive or accurate conclusions can be drawn, it implied that it cannot assess the potential impact of the pending legislation in any way at that point in time. *Id.* at 561-62.

The difference between *Helwig* and our case is clear. The statement there misled investors into believing something that was in fact not true. Here there is no allegation regarding what falsehood the investors were misled into believing from GMAC's statement, nor is there any rational way an investor can draw a false conclusion based on GMAC's simple assertion that it has "inextricable links" to GM. This distinction is also clear, despite selective quotations that may imply the contrary, when looking at *Rubinstein v. Collins*, 20 F.3d 160 (5th Cir. 1994) and *In re Time Warner, Inc. Sec. Litig.*, 9 F.3d 259 (2d Cir. 1993). Under this case law, GMAC's statement regarding "inextricable links" was not misleading.

### c. GMAC's Statements Regarding GM's Performance

Plaintiffs also allege that GMAC included materially misleading statements in its 2003 10-K, which was filed in early 2004. The specific statement at issue is as follows:

> [GMAC], beginning in the third quarter of 2003, has benefited from a significant reduction in unsecured borrowing spreads consistent with the overall improvement in the capital markets and GM as an issuer, in particular. The outlook for GM improved partially due to the significant progress made in funding GM's pension and postretirement obligations.

This statement was at best misleading, according to plaintiffs, because GM had in fact guaranteed Delphi's pension liability through 2007, which could have amounted to billions of dollars and because GM was improperly recognizing supplier credits as income earlier than it should have been, thereby inflating its cash flows. [6] GMAC's statement that it had "benefited from a significant

---

[6] We note that the district court concluded this statement was non-actionable because it found no duty pertaining to subsidiaries regarding statements about a parent corporation. The district court, however, was more focused on liability for omissions, rather than liability for misleading statements or misstatements. When an issuer undertakes

reduction in unsecured borrowing spreads" because of the overall improvement of GM referred to the fact that market prices of securities in general, and GM's securities in particular, rose in the third quarter of 2003. Similarly, the statement about the "outlook" for GM reflected the views of ratings agencies and analysts in 2003.

These statements, however, are immaterial as a matter of law when read in context of the entire 2003 10-K. Materiality is determined by analyzing the statement at issue in the context of the entire document. *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002) ("The touchstone of the inquiry is not whether isolated statements within a document were true, but whether defendants' representations or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered."). In the same 2003 10-K, GMAC disclosed that its "unsecured credit spreads" were near historic highs during the first two quarters of 2003 "due to weakness in the automotive sector of the corporate debt markets as well as specific concerns regarding the financial outlook of GM." Viewing these statements together, no reasonable investor could have been misled into believing that GMAC was representing that GM's financial health was anything more than tenuous.

Moreover, GMAC's statement is a very vague, generally optimistic statement, which also renders it immaterial as a matter of law. First, there is no doubt that the topic was important. GMAC had previously reported that its credit rating suffered because of concerns regarding GM's ability to fund GM's pension obligations. GMAC was now reporting that GM had made "significant progress" in funding those obligations.

The importance of the topic of the representation does not, however, automatically make it material. In *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651 (6th Cir. 2005), the Court confronted different statements about the same topic, namely product quality. *Compare* 399 F.3d at 6701-71, *with id.* at 674. The Court found that, while the topic was important, materiality hinges on what particularly was represented. If the representations were just loosely optimistic and "lacked a standard against which a reasonable investor could expect the[ representations] to be pegged[, then they] are too squishy, too untethered to anything measurable," to be considered material. *Id.* at 670-71. When the representations are more concrete, such as references to "objective data," then those representations may be material. *Id.* at 674.

The statement at issue in this case was too vague and immeasurable to consider material. The plaintiffs do not contend that GM had in fact made no progress funding its pension obligations. The plaintiffs only contend that because GM had guaranteed Delphi's potentially large pension liability for a certain period of time, the pension funding progress could not be called "significant." The plaintiffs then allege that because the progress was not in fact "significant," GMAC incorrectly misrepresented that GM's outlook had "improved." It is impossible, however, to measure whether the progress was in fact "significant." In the end, any progress could be called significant given the large pension liability GM faced, and investors understand that management is generally optimistic. A representation that progress was "significant" is the same as a representation that a company's products are "the best," which is considered immaterial as a matter of law. *Id.* at 670-71. GMAC only made "vague assertions of the condition of [GM] on which no reasonable investor would rely." *See Taubenfeld v. Hotels.com*, 383 F. Supp.2d 587, 593 (N.D. Tex. 2004).

### 3. Disclosure Required by Insider Trading Case Law

Plaintiffs urge us to impose upon issuers the same duty faced by those who engage in insider trading. When an insider trades in his company's stock, he has a duty to disclose any nonpublic,

---

to speak on any subject, even its parent company, Sections 11 and 12 impose strict liability for material statements that are in fact misleading or false. *See, e.g.*, *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 496 (5th Cir. 2005); *Davis v. Avco Fin. Servs., Inc.*, 739 F.2d 1057, 1064 n.2 (6th Cir. 1984).

material information he knows about the company before trading.  *See Chiarella v. United States*, 445 U.S. 222, 227-29 (1980).  Plaintiffs claim that we are faced with a similar scenario, where a "person," in this case GMAC, has far superior knowledge and is taking advantage of an uninformed investor.

We reject plaintiffs invitation to create such a duty on issuers for three reasons.  First, the law makes clear what is required.  Section 11 and Section 12 impose liability only on those who mislead or misstate in the statements they choose to make.  *See* 15 U.S.C. §§ 77k(a), 77*l*(a)(2).  The only duty to speak absent pure silence comes from Section 11, which imposes liability for an issuer's failure to include information "required to be stated" in its registration statement.  *See* 15 U.S.C. § 77k(a).  Plaintiffs have failed to point us to any regulation or statute requiring GMAC to include all nonpublic, material information in its registration statement.

Second, plaintiffs only case regarding insider trading duties applying to issuers does not hold what plaintiffs request we hold.  *Shaw v. Digital Equip. Corp.*, 82 F.3d 1994 (1st Cir. 1996) did say that it was "helpful to conceptualize . . . the corporate issuer[] as an individual insider transacting in the company's securities, and to examine the disclosure obligations that would then arise." 82 F.3d at 1203.  Despite such helpfulness, however, the First Circuit went on to do what we have done above: look to the statutes and regulations detailing what must be included in a registration statement and determine whether the information plaintiffs claim should have been included falls under those rules.  *See id.* at 1207 ("We ask, then, whether there was a duty to disclose such information in the registration statement and prospectus under the rubric of 'material changes' under Item 11(a) of Form S-3.").

Third, we have previously rejected such a wide-ranging duty.  We have said, " '[t]here is no general duty on the part of a company to provide the public with all material information.' " *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 669 (6th Cir. 2005) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1432 (3d Cir. 1997)).  Indeed, there needs to be "healthy limits" on the duty to disclose.  *Id.*  Those "healthy limits" are determined by Congress and the SEC.  We are not authorized to impose a wide-ranging duty to disclose anything that a person can allege was nonpublic, material information.  Pursuant to the above analysis, therefore, plaintiffs have no remaining claims for material omissions.

## B. Violation by Misstatements

The plaintiffs also claim that the defendants violated the Securities Act by misstating information in its registration statements and its prospectuses.  *See* 15 U.S.C. §§ 77k(a), 77l(a)(2).  A statement is a "misstatement" when it asserts something that is in fact untrue.  *Id.*  The plaintiffs are ambiguous in their complaint regarding whether a particular statement is either untrue or merely misleading.  As best we can determine, the plaintiffs claim that the defendants made the following untrue statements: (1) GMAC misstated GM's performance in its offering documents; (2) GMAC misstated facts regarding GM's performance in its 2003 10-K, which was filed in January 2004; and (3) GMAC misstated its financial results in its 10-Qs for the quarters ending March 31, June 30, September 30, and December 31, 2004 as well as in an 8-K filed on January 19, 2004.  While the district court found these statements immaterial as a matter of law, we affirm on different grounds.

### 1. GMAC's Statements in its Offering Documents

Plaintiffs do not have a claim regarding GMAC's alleged misstating of GM's performance in GMAC's 2003 offering documents. The plaintiffs argue that by disclosing the links between GM and GMAC, GMAC was in fact "incorporating all public information about GM." Because plaintiffs allege that some of the public information about GM at the time was in fact untrue, this incorporation would mean that GMAC had made misstatements in its offering documents. Such an allegation, however, is unfounded. Nowhere did GMAC assert that it was incorporating or vouching for GM's publicly disclosed status. GMAC never said that it was doing so, and it seems hard to believe that GMAC could be found to have done so merely by "affix[ing] a coupon rate to its debt securities." *Id.* The coupon rate only disclosed what in fact was true, which was that GMAC would pay a certain amount of interest on a particular bond.

Plaintiffs continually attempt to turn what are minimal, true statements into an incorporation of all sorts of information or at least say that those statements should have incorporated all that information. The problem, however, is that securities laws are clear. They mandate disclosure of certain things in the registration statement, 15 U.S.C. § 77k(a), and then they allow the company to remain silent regarding other matters if it so chooses. If it in fact chooses to speak, then it must make sure that what it says does not mislead investors into believing something that is untrue. 15 U.S.C. §§ 77k(a), 77l(a)(2). Plaintiffs cannot, however, turn the silence that the securities laws permit into liability. *See Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988); *see also Mayer v. Mylod*, 988 F.2d 635, 639 (6th Cir. 1993).

### 2. GMAC's Statements in the 2003 10-K

As analyzed in Section II.A.2.c above, the plaintiffs have no claim regarding the immaterial, optimistic statements in GMAC's 2003 10-K.

### 3. GMAC's Statements in the 2004 10-Qs

Plaintiffs had asserted in their complaint that the financial results in GMAC's first three 10-Qs for 2004 were materially misstated. The district court disagreed with plaintiffs, finding that the misstatements in the 10-Qs were immaterial as a matter of law. On appeal, the plaintiffs initially renewed their argument that the misstatements in the 2004 10-Qs were material. In our first opinion in this case, we declined to address any claims regarding documents filed in 2004, namely the 2003 10-K and the 2004 10-Qs, because the plaintiffs' offering was in 2003. The plaintiffs then moved for rehearing partially based upon the fact that the offering documents in 2003 had, as permitted by the laws and regulations applicable to the sort of offering in this case, automatically incorporated any documents filed later with the SEC. The plaintiffs' only argument, however, was that because the offering documents had incorporated later-filed documents, the panel had to address the statement in the 2003 10-K. ("The Panel avoid[ed] addressing whether defendants' statement that GM's financial outlook was improving was actionable. . . . That statement was incorporated by reference [] into all of the Offering Materials issued after GMAC filed its 2003 10-K with the SEC, including all the prospectus supplements and pricing supplements defendants issued and filed during the Class Period."). By failing to ask for reconsideration of the 2004 10-Qs, the plaintiffs have waived any argument regarding those 10-Qs.

III. Control Person Liability

Plaintiffs also asserted control person liability against General Motors and other individual defendants under § 15 of the Securities Act of 1933. Section 15, however, grounds liability of control persons on the corporation being found liable under Section 11 or 12. *See* 15 U.S.C. § 77o. Because plaintiffs' Section 11 and 12 claims against the corporation are without merit, their claim for control person liability is also dismissed.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's judgment dismissing the plaintiffs' complaint.